UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN
_____/

## UNITED STATES' MEMORANDUM OPPOSING DEFENDANTS' MOTIONS TO SEVER DEFENDANTS AND COUNTS

The United States of America, via the undersigned, opposes the defendants'

Motions to Sever Defendants and Counts (Docs. 59, 65, 66) and addresses the

Affidavit filed in Doc. 68.   Katrina Brown and Reginald Brown are charged together

in the first thirty-three counts of the Indictment.   There is a strong presumption that

alleged co-conspirators, and those alleged to have aided and abetted a fraudulent

scheme and laundered money together, are tried together.   The defendants cannot

meet the exceedingly high standards for severance and prejudicial joinder set forth in

Federal Rules of Criminal Procedure 8 and 14(a).   The motions should be denied,

and the defendants should proceed to trial together as scheduled on January 31,

2019.

## I.      BACKGROUND

Count One of the Indictment alleges a conspiracy to commit mail and wire

1

fraud that lasted from late 2013 through early 2015.   The conspiracy centers around

a Small Business Administration (SBA) loan that Basic Products and CoWealth,

LLC obtained from SBA approved lender BizCapital BIDCO I, LLC (BizCapital).

Katrina Brown was the point person for Basic Products and CoWealth, and the

individual communicating with BizCapital about loan draws and expenditures.

For a period of time, Katrina Brown followed BizCapital's process, which

required Basic Products (the entity receiving draws from BizCapital) to provide

documentation of expenditures incurred while running the barbecue sauce

production business in order to receive loan draws.   Over time, the business was

mismanaged and the ability to receive funds in certain categories (working capital)

expired.   In mid to late 2013, Basic Products did not have sufficient capital to

continue in any meaningful fashion.   Instead of approaching BizCapital with that

information and attempting to re-negotiate loan terms, Katrina Brown resorted to

fraud beginning with draw number 54.

In late 2013, Reginald Brown became a co-conspirator and began helping

Katrina Brown commit fraud.   Katrina Brown assisted Reginald Brown in

incorporating shell entities A Plus Training and Consultants, LLC (incorporated on

December 10, 2013) and RB Packaging, LLC (incorporated on January 24, 2014).

Reginald Brown opened bank accounts for A Plus Training (December 12, 2013) and

RB Packaging (February 19, 2014).   Neither entity performed any legitimate

business.

Katrina Brown sent fake A Plus Training and RB Packaging invoices for services that were never rendered and products that were never purchased, and duped BizCapital into believing the invoices were legitimate and that the ensuing checks BizCapital sent via United Parcel Service (UPS) for reimbursement to Reginald Brown's mother's house and Reginald Brown's house were for legitimate expenditures.   When the BizCapital checks were received at either of those locations, the checks were deposited into the A Plus Training account or the RB Packaging account, despite that neither entity did anything to earn the money.   The deposit of those funds into the A Plus Training and RB Packaging accounts triggered an interstate wire, which funded the accounts.

In the overwhelming majority of Draws 57a through 78, cash was withdrawn from (or cashier's checks and checks were negotiated from) the A Plus Training and RB Packaging accounts, and then a monetary transaction occurred (on six occasions in excess of $10,000) when those funds were deposited back into the Basic Products account - - without BizCapital's knowledge.   A Plus Training and RB Packaging retained tens of thousands of dollars of SBA (government backed) loan funds in those accounts, despite doing nothing to earn them.

The Indictment also alleges (Counts 13 and 26) that after the City of Jacksonville (COJ) received binders from BizCapital containing all of the draw

3

paperwork (which included the fake A Plus Training and RB Packaging invoices and copies of the corresponding BizCapital checks mailed to the shell entities), the COJ wired $210,549.99 in taxpayer (grant) funds to BizCapital for the benefit of CoWealth and Basic Products.   This occurred pursuant to the applicable calculations and agreements of what percentage of COJ grant funds could be used for the barbecue sauce business.

The evidence pertaining to Counts 1 through 33 in the Indictment are identical for both defendants.   The defendants seek a severance from each other (Docs. 59 and 66).   Katrina Brown also seeks to sever Counts 34 through 37 from Counts 1 through 33 (Doc. 65).   Reginald Brown does not join in that request.

Counts 34 through 37 are properly joined to Counts 1 through 33.   Those fraud and false statement charges stem from the same effort – to inject additional funds into the barbecue sauce business.   It involves the same entities (Basic Products and KJB Specialties) and a common scheme (submitting fake documents to lenders).   Katrina Brown attempted to perpetrate the fraud and made false statements to the potential lender (WebBank) and its brokers (Lendcore, Credibly, and BizFi) because her opportunity to obtain funds via fraud from BizCapital expired in early 2015.

The Court should try the defendants together and leave the Indictment intact. The defendants cannot meet the exceedingly high burden for a severance of defendants or counts.

## II.   DISCUSSION

### A.   The Defendants are Properly Joined

Not only are Katrina Brown and Reginald Brown charged in the same Indictment and alleged to have participated in the same series of acts or transactions, they are alleged co-conspirators charged together in the first 33 counts.   This is the classic case where joinder is proper.

Rule 8(b) is a pleading rule. *United States v. Morales,* 868 F.2d 1562, 1567-68 (11th Cir.1989).   The rule permits two or more defendants to be charged in the same indictment if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b); *United States v. Blankenship*, 382 F.3d 1110, 1120 (11th Cir. 2004).   The rule is "to be construed liberally in favor of joinder." *United States v. Bryan,* 843 F.2d 1339, 1342 (11th Cir. 1988).   In analyzing a Rule 8(b) claim, the court looks only to the indictment in order to determine if the initial joinder was proper.   *United States v. Liss,* 265 F.3d 1220, 1228 (11th Cir. 2001).   "There is a preference in the federal system for joint trials of defendants who are indicted together."   *Zafiro v. United States,* 506 U.S. 534, 537 (1993).   Rule 8(b) permits joinder of defendants in the same indictment to achieve judicial economy. *Id.*

Although Rule 8(b) does not require that each defendant be charged with each act in the series, there must be a logical relationship between each of the defendants

5

joined. *See, e.g., United States v. Saget,* 991 F.2d 702, 707 (11th Cir. 1993) (joinder of defendants proper when there is a "common thread" between charges).   Joinder is initially proper even if based only on allegations in the indictment that the defendants participated "in the same series of acts or transactions." *See United States v. LaSpesa,* 956 F.2d 1027, 1032 (11th Cir.1992) (initial joinder proper because indictment sufficiently alleged that all defendants involved in same series of acts or transactions constituting conspiracy offenses; court looks "only to the face of the indictment to determine whether joinder was proper").

Here, initial joinder is clearly proper.   The Indictment goes well beyond alleging the defendants participated in the same series of transactions.   Katrina Brown and Reginald Brown are charged identically in Counts 1 through 33.   If the defendants were severed, this Court would try the same case twice as to those counts. The Indictment alleges the detailed manner in which Katrina Brown and Reginald Brown performed their various roles to perpetrate the fraud (mail and wire fraud, and conspiracy to commit both offenses) and launder money.

Simply put, Katrina Brown needed another party to perpetrate this scheme. When Katrina Brown decided to provide false invoices to BizCapital seeking large payments to third parties, the chief payment recipient became Reginald Brown (via A Plus Training and RB Packaging).   Katrina Brown e-mailing the false invoices to BizCapital caused BizCapital to send the checks via UPS (mail fraud) to Reginald

6

Brown's mother's address and Reginald Brown's address.   This facilitated Reginald

Brown and Katrina Brown's ability to ensure deposits of the BizCapital checks into

the A Plus Training and RB Packaging bank accounts (wire fraud).   This series of

events occurred on at least twelve occasions.

The Indictment alleges that Katrina Brown and Reginald Brown participated

on each occasion.   Moreover, to permit Katrina Brown to gain control of the

majority of the deposited funds in the accounts of shell entities A Plus Training and

RB Packaging, funds were withdrawn as cash or obtained via cashier's check or

check from those accounts, portions of which were deposited into the Basic Products

account.   On six occasions, the amount of the deposit was more than $10,000 – thus

triggering the statutory threshold for section 1957 money laundering.   The

Indictment alleges that the defendants worked together and committed these acts in

lockstep.

As controlling precedent establishes, the critical analysis for joinder of

defendants is what the Indictment alleges.   Reginald Brown's motion misses the

mark, as it relies on a jury argument (as opposed to the four corners of the

indictment) that Reginald Brown did not knowingly commit a crime.   While the

United States disputes that claim and will seek to carry its burden at trial, an analysis

of Reginald Brown's theory of the case is irrelevant at this juncture.   The critical

analysis under this "pleading rule" is what the Indictment alleges, not what the defendants claim.

### B.    All Counts as to Both Defendants are Properly Joined

Katrina Brown moves pursuant to Federal Rule of Criminal Procedure 8(a) and 14(a) and seeks a severance of Counts 34 through 37 from Counts 1 through 33. Katrina Brown cannot make the requisite showing under either rule.

There is a two-step analysis to determine whether a district court should try separate charges at the same time.   *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002).   The first is a *de novo* review of whether charges were properly joined; the second is whether a court abused its significant discretion under Rule 14(a) by denying a motion to sever.   *Id.*

Pursuant to Rule 8(a), the indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."   Fed.R.Crim.P. 8(a).   The Eleventh Circuit construes Rule 8(a) broadly in favor of joinder and permits "joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions."   *Hersh*, 297 F.3d at 1241 (quoting Fed.R.Crim.P. 8(a)).   Crimes of a "similar character" mean "nearly corresponding; resembling in many respects; somewhat alike; having a general

likeness." *Id.* In addition, the offense need only be similar in "category, not in evidence." *Id.* Moreover, "the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes." *United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000).

In this case, Counts 34 through 37 bear a significant resemblance to the charges alleged in Counts 1 through 33 (particularly Counts 1 through 27); the crimes are indeed "connected." Counts 34 through 37 are fraud and false statement counts that pertain to alleged misrepresentations that Katrina Brown made in her attempts to obtain loan funds that KJB Specialties and Basic Products would not have otherwise qualified for if Katrina Brown (via those entities) honestly sought bank loans. Katrina Brown was attempting to inject loan funds into KJB Specialties and Basic Products in the same manner that she attempted to obtain draws from BizCapital beginning with draw 54 – via fraud.

The attempted bank fraud counts (Counts 34 and 35) and the false statement to financial institution counts (Counts 36 and 37) involve KJB Specialties (the original entity that obtained the loan funds and secured the grant funds from the City of Jacksonville pursuant to a Redevelopment Agreement) and Basic Products (the recipient of the SBA-approved loan funds via BizCapital for barbecue sauce production). The barbecue sauce business was run in connection with the family barbecue stand (KJB Specialties).

9

The frauds are strikingly similar.   During the BizCapital/SBA fraud, Katrina Brown provided BizCapital fake invoices from A Plus Training and RB Packaging to secure tens of thousands of dollars in draw funds from BizCapital that never should have been received.   Portions of that money were used for Basic Products, large portions remained with Reginald Brown, large portions were converted to cash and used for personal expenses, and other portions are unaccounted for.

When the ability to obtain draws from BizCapital expired in January 2015, Katrina Brown pivoted nine and ten months later and used fake and doctored Wells Fargo bank documents for the months of August through October 2015 and emailed them to a Lendcore representative seeking a $60,000 merchant advance loan[1] from Credibly and WebBank, which was ultimately denied.

One year later (November 2016), Katrina Brown again tried to obtain a merchant advance loan from WebBank via Credibly.[2]   Basic Products was the applicant.   Katrina Brown emailed fake and doctored bank statements seeking the same type of loan.   This time, Katrina Brown used the bank statements for KJB Specialties for the months of March, April, and May 2016 as a template to create the fake and doctored bank statements for Basic Products for July, August, and

_____

1 A merchant advance loan is for a borrower who typically would not qualify for traditional financing.   The loan terms do not exceed one year and are expensive for the borrower.   The lender purchases the borrower's future cash flows.   Typically, the loan agreement specifies that a percentage of daily bank deposits are automatically debited from the borrower's bank account.   On a merchant advance loan of $60,000, the borrower will likely pay $80,000 over time to the lender.

2 An entity named BizFi served as the broker for this potential merchant advance loan.

September 2016.   Katrina Brown drastically inflated the monthly credits to the Basic Products bank statements in seeking the loan.   The loan was not funded.

The crimes are similar in nature and connected.   Because Katrina Brown had no ability to obtain draw funds during the BizCapital/SBA fraud, she engaged in a similar fraud with respect to Credibly and WebBank.   The lack of opportunity to continue the BizCapital/SBA fraud and the subsequent attempted perpetration of the Credibly/WebBank fraud is the seminal fact that "connects" the frauds.   Not only are the counts properly joined under the standards articulated in *Hersh* and Rule 8(a), the Court saves nothing in severing Counts 34 through 37.   The backstory for why the attempted bank fraud and false statements occurred is because of the end of the BizCapital/SBA fraud (i.e., Katrina Brown had no further access to draw money).   If the Court severs the counts, instead of one five to eight day trial, there will be two - both of which will contain very similar recitations of the evidence.

## C.   The Defendants cannot Establish Prejudicial Joinder

A district court may order severance of defendants or counts under Federal Rule of Criminal Procedure 14(a) in two circumstances: (1) there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants; or (2) a joint trial would prevent the jury from making a reliable judgment about guilt or innocence.   *Zafiro*, 506 U.S. at 539.   "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to

11

the district court's sound discretion." *Id.* at 538-39.   "In deciding a severance

motion, a district court must balance the right of the defendant to a fair trial against

the public's interest in efficient and economic administration of justice," and should

only grant a severance if a defendant shows "specific and compelling prejudice"

resulting in "fundamental unfairness." *United States v. Baker*, 432 F.3d 1189, 1236

(11th Cir. 2005) (abrogated on other grounds).   When weighing potential prejudice

to a defendant, "the court must consider whether the jury could 'individualize each

defendant in his relation to the mass,' that is, whether the jury could avoid

cumulating the evidence against all of the defendants and could make individualized

guilty determinations." *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir.

1995).   A defendant's burden under Rule 14(a) is an exceedingly high one; a

defendant must demonstrate that he will suffer a "substantial" or "compelling"

prejudice to his or her right to a fair trial.   *Zafiro*, 506 U.S. at 540; *United States v.

Condon*, 132 F.3d 653, 658 (11th Cir. 1998).

### 1.  Mutually antagonistic defenses do not require severance

Neither defendant can establish prejudice.   The evidence pertaining to Counts

1 through 33 is the same for Katrina Brown and Reginald Brown.   Both played their

particular role in the fraud and money laundering crimes.   That a defendant may

shift blame on certain counts to a co-defendant is insufficient to establish substantial

or compelling prejudice.   "Mutually antagonistic defenses are not prejudicial *per se*."

*Zafiro*, 506 U.S. at 538.   "The [Supreme] Court specifically rejected the notion that defendants who have contradictory defenses are inherently prejudiced simply because 'a jury will conclude [either] that both defendants are lying and convict them both on that basis, or that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt.'" *Blankenship*, 382 F.3d at 1122 (*quoting Zafiro*, 506 U.S. at 540).   The desire of a defendant to try his case in a certain manner does not force a severance.   *See United States v. Chavez*, 584 F.3d 1354, 1361 (11th Cir. 2009) (*citing United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998)) (defendants are not entitled to severance because they may have a better chance of acquittal in separate trials).

Katrina Brown's motion articulates mere guesswork, which is what *Zafiro* and its progeny remove from the equation.   Assertions that if the defendants present some form of an antagonistic defense and that the jury finds one defendant guilty will conclusively determine the jury's decision on another defendant are insufficient to establish prejudice.   Katrina Brown's argument ignores the Court's ability to properly instruct the jury.   *See Blankenship*, 382 F.3d at 1123 ("[T]he strong presumption is that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered").[3]

---

3 During the trial of this case, the Court will instruct the jury that "[e]ach count of the indictment charges a

## 2.  The defendants cannot show denial of a Constitutional right

Severance is only required where a joint trial leads to the denial of a constitutional right.  *Zafiro*, 506 U.S. at 540.   Severance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant.  *Blankenship*, 382 F.3d at 1123.

As mentioned in Katrina Brown's motion, two FBI Agents interviewed Reginald Brown in December 2016.   The interview was not audio or video recorded.   During the interview, Reginald Brown admitted to certain facts the government alleges were material to the perpetration of the BizCapital/SBA fraud, and further stated that Katrina Brown engaged in certain acts that the government alleges were material to the scheme.

The government will not seek to introduce these statements if Reginald Brown does not testify.   In *Bruton v. United States*, the Supreme Court held that admission of an extrajudicial statement of a non-testifying co-defendant "violated [the defendant's] right to cross-examination secured by the Confrontation Clause of the Sixth Amendment."   391 U.S. 123, 126 (1968).   Since the *Bruton* decision, the Supreme Court and the Eleventh Circuit have developed its contours.

In *Gray v. Maryland*, the Supreme Court held that courts must examine closely

---

separate crime against one or more of the Defendants.   You must consider each crime and the evidence relating to it separately.   And you must consider the case of each Defendant separately and individually.   If you find a Defendant guilty of one crime, that must not affect your verdict for any other crime or any other Defendant."   (11th Cir. Pattern Jury Instr. (Crim), Basic Instr. 10.4 (2016)).

inferences of culpability cast on a non-testifying co-defendants, stating that "inference pure and simple cannot make the critical difference," and that the analysis turns "in significant part upon the kind of, not the simple fact of, inference," as to whether the statement is inculpating.   523 U.S. 185, 196 (1998).

The Eleventh Circuit analyzed *Bruton* and its progeny in *United States v. Schwartz*, 541 F.3d 1331 (11th Cir. 2008).   The Eleventh Court held that "a defendant's confrontation right is violated when the court admits a codefendant statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt."   *Id.* at 1351.

Here, in a joint trial of both defendants (assuming Reginald Brown does not testify), the United States will not seek to elicit testimony about his statements from the interviewing FBI agents.   However, if Reginald Brown testifies (even if Katrina Brown does not testify), the *Bruton* issue vanishes as Katrina Brown's counsel would have the opportunity to cross-examine Reginald Brown.   Thus, no constitutional infringement would occur.

### 3.   Katrina Brown's affidavit (Doc. 68) does not require severance

The filing of Doc. 68 in this case (the Affidavit of Katrina Brown) requires discussion.   The origin of the affidavit is unclear.   On its face, it does not appear to have been prepared by counsel for Katrina Brown.   Counsel for Reginald Brown filed the affidavit.   Katrina Brown's counsel does not mention the affidavit in

15

Katrina Brown's Motion to Sever Defendants (Doc. 66) or Motion to Sever Counts

(Doc. 65).   The affidavit essentially provides that Katrina Brown would testify at

Reginald Brown's trial for the defense if the defendants are severed, and contains

self-serving and blanket statements that she did not conspire with Reginald Brown as

to any counts he is named in the Indictment.   The affidavit contains no factual

recitation of any such testimony.   It is silent on whether Katrina Brown would

testify in a joint trial, or in her own separate trial.

"A defendant arguing for a severance on the ground that it will permit the

exculpatory testimony of a co-defendant must show:   (1) a bona fide need for the

testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and

effect of the desired testimony; and (4) that the co-defendant would have testified at a

separate trial."   *Baker*, 432 F.3d at 1239 (*citing United States v. Cobb*, 185 F.3d 1193,

1197-98 (11th Cir. 1999)).   Even if the defendant establishes all four elements, the

Court "must still:   (1) examine the significance of the testimony in relation to the

defendant's theory of the case; (2) assess the extent of prejudice caused by the

absence of the testimony; (3) consider judicial administration and economy; and (4)

give weight to the timeliness of the motion."   *Id.* at 1239.

The Katrina Brown affidavit does not support severance.   It simply provides,

"I did not conspire with co-defendant Mr. Reginald Brown in any matter or forms as

stated in: [then Counts 1 through 33 are listed in categories]."   Put another way,

16

Katrina Brown is simply stating that she (and Reginald Brown) are not guilty of the charged crimes.   This is a deficient, self-serving, and general denial.

The Eleventh Circuit has held on multiple occasions that such self-serving affidavits and general denials are insufficient to require severance.   *See Baker*, 432 F.3d at 1239-40 (co-defendant Shaw's willingness to testify for co-defendant Baker and the submission of Shaw's affidavit stating that Baker did not "commit crimes involving drugs and or money rip-offs at [Shaw's] request," nor "observe drugs in [Shaw's] presence," was simply a general denial of the government's allegations and served Shaw's interest by denying culpability – severance was properly denied); *see also United States v. Novaton*, 271 F.3d 968, 990 (11th Cir. 2001) ("statements concerning the testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance"); *United States v. Pepe*, 747 F.2d 632, 650 (11th Cir. 1984) (affirming district court's refusal to sever a trial based on an affidavit in which the affiants promised to testify that the affiants had not been involved in illegal loan sharking, that the defendant was not involved in such activity, and that the affiants had never asked the defendant to attend a meeting concerning such activity); *United States v. DeSimone*, 660 F.2d 532, 540 (5th Cir. Unit B Nov. 1981) (affirming district court's refusal to sever a case based on an affidavit stating that the affiant had not conspired with his co-defendants, and that neither he nor they had possessed marijuana as

17

charged in the indictment).

The affidavit lacks any specificity, and merely seeks to reinforce Katrina
Brown's own theory – that she conspired with no one and did not aid and abet any
crime.   Severing Katrina Brown and Reginald Brown would waste judicial time and
resources.   The Court would be forced to try the same case twice.   These self-
serving and blanket statements entirely miss the prejudice mark.   The motions to
sever should be denied.

## III.    CONCLUSION

For the foregoing reasons, this Court should deny the motions to sever
defendants and counts.   The Court should try the defendants together and keep the
Indictment intact.

18

MARIA CHAPA LOPEZ
United States Attorney


By:    *s/ Tysen Duva*
        Tysen Duva
        Assistant United States Attorney
        Florida Bar No. 0603511

        *s/ Michael J. Coolican*
        Michael J. Coolican
        Assistant United States Attorney
        USAO No. 156
        300 North Hogan Street, Suite 700
        Jacksonville, Florida   32202-4270
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310
        E-mail:   Tysen.Duva@usdoj.gov
                   Michael.Coolican@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Darcy Galnor, Esquire (Counsel for Katrina Brown)

Tom Bell, Esquire (Counsel for Reginald Brown)

                  *s/ Tysen Duva*
                  Tysen Duva
                  Assistant United States Attorney

19