UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN
___________________/

**UNITED STATES' MEMORANDUM OPPOSING DEFENDANTS' MOTIONS TO STRIKE SURPLUSAGE**

The United States of America opposes the defendants Katrina Brown's and Reginald Brown's respective Motions to Strike Surplusage (Docs. 58, 64). A motion to strike surplusage from an indictment cannot be granted unless it is clear that the allegations at issue are both: (i) irrelevant to the charges; and (ii) inflammatory and prejudicial. *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992). The defendants' motions to strike fail to make this showing, are otherwise without merit, and should be denied.

## I. BACKGROUND

Count One of the Indictment alleges a conspiracy to commit mail and wire fraud that lasted from late 2013 through early 2015. The conspiracy centers around a Small Business Administration (SBA) loan that Basic Products and CoWealth, LLC obtained from SBA-approved lender BizCapital BIDCO I, LLC (BizCapital), as well as a business development grant and loan from the City of Jacksonville (COJ). The general purpose of these loans and the grant was to finance the purchase and

development of a commercial manufacturing facility of barbecue sauce at a warehouse on Commonwealth Avenue in Jacksonville, which would employ at least 56 people. In 2011, Reginald Brown (at the time a member of the Jacksonville City Council) voted in favor of the ordinance that authorized the COJ loan and grant. Katrina Brown was the point person for Basic Products and CoWealth, and the individual communicating with BizCapital and the COJ about loan draws and expenditures.

For a period of time, Katrina Brown followed BizCapital's process, which required Basic Products (the entity receiving draws from BizCapital) to provide documentation of expenditures incurred while running the barbecue sauce production business in order to receive loan draws. Over time, the business was mismanaged and the ability to receive funds in certain categories (working capital) expired. In mid to late 2013, Basic Products did not have sufficient capital to continue in any meaningful fashion. Instead of approaching BizCapital with that information and attempting to re-negotiate loan terms, Katrina Brown resorted to fraud beginning with draw number 54.

In late 2013, Reginald Brown became a co-conspirator and began helping Katrina Brown commit fraud. Katrina Brown assisted Reginald Brown in incorporating shell entities A Plus Training and Consultants, LLC (incorporated on December 10, 2013) and RB Packaging, LLC (incorporated on January 24, 2014). Reginald Brown opened bank accounts for A Plus Training (December 12, 2013) and

RB Packaging (February 19, 2014). Neither entity performed any legitimate business.

Katrina Brown sent fake A Plus Training and RB Packaging invoices for services that were never rendered and equipment and other products that were never purchased, and duped BizCapital into believing the invoices were legitimate and that the ensuing checks BizCapital sent via United Parcel Service (UPS) for reimbursement to Reginald Brown's mother's house and Reginald Brown's house were for legitimate expenditures. When the BizCapital checks (drawn on the SBA-backed loan proceeds) were received at either of those locations, the checks were deposited into the A Plus Training account or the RB Packaging account, despite that neither entity did anything to earn the money.

In the overwhelming majority of Draws 57a through 78, cash was withdrawn from (or cashier's checks were negotiated from) the A Plus Training and RB Packaging accounts, and then a monetary transaction occurred (on six occasions in excess of $10,000) when those funds were deposited back into the Basic Products account - - without BizCapital's knowledge. A Plus Training and RB Packaging retained tens of thousands of dollars of SBA (government backed) loan funds in those accounts, despite doing nothing to earn them.

The Indictment also alleges that after the COJ received binders from BizCapital containing all of the draw paperwork (which included the fake A Plus Training and RB Packaging invoices and copies of the corresponding BizCapital

checks mailed to the shell entities), the COJ wired $210,549.99 in grant funds to BizCapital for the benefit of CoWealth and Basic Products. This occurred pursuant to the applicable calculations and agreements of what percentage of COJ grant funds could be used for the barbecue sauce business.

Reginald Brown now moves to strike from the Indictment the allegation that he voted in favor of the ordinance that approved the COJ loan and grant. Katrina Brown joins that request, but also asks the Court to strike allegations describing the mission of the SBA and identifying the warehouse as the location where the barbecue sauce "was supposed to be manufactured, bottled, and prepared for shipment and sale."

## II. DISCUSSION

There is no basis for striking these relevant, inoffensive allegations, and as such, the defendants' motions to strike should be denied. Alternatively, the Court could deny the motions without prejudice and permit the defendants to revisit the issue after the close of evidence at trial, when the Court will be better situated to confirm that the allegations are appropriately included in the Indictment.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment. . . ." Under Rule 7(d), "[a] motion to strike surplusage . . . should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.'" *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting

*United States v. Huppert*, 917 F.2d 507, 511 (11th Cir.1990) *superseded by statute on other grounds*). "[T]his is a most 'exacting standard.'" *Huppert*, 917 F.2d at 511 (quoting 1 Charles A. Wright, FED. PRACT. & PROC. § 127 at 424–29 (1982)).

Given that an allegation must be deemed clearly irrelevant (as well as inflammatory and prejudicial) before it is struck, "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language." *Awan*, 966 F.2d at 1426.

**A. The Allegation Concerning Reginald Brown's Vote in Favor of the COJ Grant Should Not Be Stricken from the Indictment Because It Establishes His Knowledge of the Grant and Is Therefore Relevant.**

In this case, both defendants would strike the allegation that Reginald Brown voted in favor of the ordinance authorizing the COJ loan and grant to Katrina Brown's businesses. *See* Indictment, Ct. 1, ¶ 9. They argue that the allegation is irrelevant and unfairly suggests that the defendants were conspiring as early as 2011, when the vote took place. Reginald Brown further argues that there was nothing unusual about his voting in favor of the ordinance, alleging that he typically supported such measures.

The defendants' arguments fail. That Reginald Brown voted in favor of the ordinance shows that he was aware of Katrina Brown's family's development project. Proving his knowledge of the project and its funding sources is fundamental to proving that he knowingly conspired with, and aided and abetted, Katrina Brown in defrauding the project's funding sources, which includes the COJ grant, all as

alleged in Counts 1, 13, and 26. His voting for the ordinance is relevant to such knowledge, and therefore should not be stricken. *See Awan*, 966 F.2d at 1426.

Even if this allegation was not relevant (although it is), then it still should remain in the Indictment because it is neither "inflammatory" nor "prejudicial." *See id.* As Reginald Brown asserts in his motion, he customarily voted in favor of similar ordinances. Given this proffered explanation for his vote, it is unclear how the vote allegation is necessarily inflammatory or prejudicial. Moreover, the defendants' concern that jurors may infer that the defendants were conspiring together as early as 2011 will be resolved by the Court's standard jury instructions that the defendant are "on trial only for the specific crimes charged in the indictment," which the United States must prove were "committed on a date reasonably close to the date alleged" (in this case, in or about late 2013 through in or about early 2015). *See* 11th Cir. Pattern Jury Instr. Crim. B10.4, B9.2; *see also Huppert*, 917 F.2d at 511 (affirming denial of motion to strike, noting the court's confidence that "the jury could understand the court's instructions and separate background information [contained in the indictment] from the law and the relevant facts").

In short, the allegation concerning Reginald Brown's vote in 2011 in a favor of the ordinance that approved the COJ grant (that he and Katrina Brown are charged with later misappropriating) is not irrelevant, inflammatory, or prejudicial. It should remain in the Indictment.

### B. The Description of the SBA's Mission Is Basic, Relevant Background Information Concerning a Victim in the Case and Therefore Should Not Be Stricken from the Indictment.

Katrina Brown next argues that the Court should strike from the Indictment a description of the SBA's mission, specifically: "The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters." *See* Indictment, Ct 1, ¶ 8. With little elaboration, Katrina Brown claims that including this description of the SBA in the Indictment "serves a single purpose – inflaming passion and prejudice" against her.

Ms. Brown is mistaken. The purpose of including the SBA's mission statement in the Indictment is to describe the SBA and its function as a government agency. This basic background information is relevant. The SBA is a victim of the defendants' criminal conduct. As alleged in the Indictment, the defendants defrauded the proceeds of an SBA-guaranteed loan. To explain the circumstances of the crime, the jury necessarily will hear testimony describing the SBA, its general mission, and its specific business loan programs and procedures.

Moreover, the mission statement is in no way "inflammatory" or "prejudicial." It is a simple, one-sentence, accurate recitation of SBA's role in our nation's economy. Ultimately, it is far less controversial than other allegations that courts have declined to strike from indictments as inflammatory or prejudicial. *See, e.g.*, *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1356-57 (M.D. Fla. 2004)

(concluding that, in the context of a murder conspiracy and terrorism-financing case, use of the terms "terrorism," "terrorist" and "terrorist activity" was not prejudicial).

The straightforward description of the mission of the SBA (a victim in the case) is not irrelevant, inflammatory, or prejudicial, and as such, should remain in the Indictment.

**C. An Allegation that the Warehouse Was the Location where the Barbecue Sauce Was "Supposed to Be Manufactured" Is Nether Irrelevant Nor Inflammatory, and Therefore, Not Subject to a Motion to Strike.**

Finally, Katrina Brown argues that the Court should strike from the Indictment a statement that the warehouse that Katrina Brown's business purchased was "where the Barbecue Sauce was supposed to be manufactured, bottled, and prepared for shipment and sale." She claims that the statements is "misleading, prejudicial, and inflammatory" and therefore should be struck from the Indictment.

She is again mistaken. As a preliminary matter, Ms. Brown does not contend that the statement is irrelevant. As noted above, before a court can strike an allegation as surplusage, it must find the allegation to be inflammatory, prejudicial, *and irrelevant*. *See Awan*, 966 F.2d at 1426. Having failed to address relevance (a dispositive issue), the motion fails to make a *prima facie* case for striking the allegation.

To avoid any doubt, however, the allegation is relevant. The allegation states in full:

> The SBA Loan Authorization specifically allocated $545,000.00 for the purchase of the land located at 5638 Commonwealth Avenue, Jacksonville, Florida 32254 (Commonwealth warehouse), which was the property with the warehouse where the Barbecue Sauce was supposed to be manufactured, bottled, and prepared for shipment and sale.

Indictment, Ct. 1, ¶ 19. This is basic background information about a financing transaction that is central to the case. As noted above (and in the Indictment), the defendants conspired and schemed to obtain through fraud certain proceeds of the SBA Loan. To understand the defendants' scheme, the jury will necessary need to understand (and receive evidence concerning) the SBA Loan Authorization, its purpose, and the financing that it authorized.

Nevertheless, Katrina Brown insists that the use of the phrase "supposed to" (in the description of "the warehouse where the Barbecue Sauce was supposed to be manufactured") is misleading because, according to her, barbecue sauce was manufactured, bottled, and prepared for sale at the warehouse.

Ms. Brown is reading too much into the phrase "supposed to." The allegation is an accurate description of the intentions for warehouse at the time of the SBA Loan Authorization, which preceded the purchase of that property. At the time of the loan authorization, the barbecue sauce was intended (or understood, or planned, or *supposed*) to be manufactured at the warehouse. The phrase "supposed to" is accurate in context and simply does not have the smell of nefarious intent that Katrina Brown gives it.

If, however, the Court disagrees and finds that "supposed to" is a loaded term, there are still no grounds for striking that phrase. The evidence at trial will show that the warehouse facility was "supposed to" mass-manufacture and bottle barbecue sauce, employing at least 56 people, but that it never did. Notwithstanding Katrina Brown's submission of multiple invoices from Reginald Brown's companies purportedly documenting the purchase of industrial cooking equipment and mass quantities of inventory, the evidence at trial will show that those invoices were fraudulent; that Reginald Brown had no such equipment or inventory to sell; and that the warehouse never became a commercial manufacturing facility that employed dozens of people, as the project was originally billed to the COJ, SBA, and BizCapital. This evidence will demonstrate that the phrase "supposed to" is in no way misleading or inflammatory. Accordingly, the Court has no reason to strike it from the Indictment.

**D. The Court Could Delay Making a Final Ruling on the Defendants' Motions until after the Close of Evidence at Trial.**

As argued above, the allegations that the defendant would strike from the Indictment are not clearly irrelevant, inflammatory, and prejudicial. As such, the Court can – and should – deny the defendants' motions to strike. But to the extent that the Court finds that the motions present a close call, then the Court can appropriately deny the motions without prejudice to the defendants' revisiting the issue after the close of evidence at trial. At that time, the relevance of the allegations

at issue may be more obvious to the Court. *See Awan*, 966 F.2d at 1426 (noting that "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language").

**CONCLUSION**

A motion to strike surplusage cannot be granted "unless it is clear that the allegations [that the defendants would strike] are not relevant . . . and are inflammatory and prejudicial." *Awan*, 966 F.2d at 1426 (citation omitted). The defendants have not made this showing. As such, the United States respectfully requests that the defendants' motions to strike be denied.

MARIA CHAPA LOPEZ
United States Attorney

By: */s/ Michael J. Coolican*
Tysen Duva
Assistant United States Attorney
Florida Bar No. 0603511
Michael J. Coolican
Assistant United States Attorney
USAO No. 156
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
E-mail: Tysen.Duva@usdoj.gov
Michael.Coolican@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Darcy D. Galnor, Esq.
Counsel for Katrina Brown

Thomas M. Bell, Esq.
Counsel for Reginald Brown

*/s/ Michael J. Coolican*
Michael J. Coolican
Assistant United States Attorney