UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN

# **O R D E R**

**THIS CAUSE** is before the Court on Defendant Reginald Brown and Defendant Katrina Brown's motions to sever Defendants, and Defendant Katrina Brown's Motion to Sever Counts. See Defendant Reginald Brown's Motion to Sever the Trial of Reginald Brown From the Trial of Katrina Brown and Memorandum of Law (Doc. 59; R. Brown Motion to Sever Defendants), filed on October 17, 2018; Defendant Katrina Brown's Motion to Sever Counts Thirty-Four Through Thirty-Seven (Doc. 65; K. Brown's Motion to Sever Counts), filed on October 19, 2018; and Defendant Katrina Brown's Motion to Sever Defendants (Doc. 66; K. Brown's Motion to Sever Defendants), filed on October 19, 2018. The government filed a response to all three Motions on November 1, 2018. See United States' Memorandum Opposing Defendants' Motions to Sever Defendants and Counts (Doc. 72; Response). Thus, the Motions are ripe for review.[1]

---

[1] The Court notes that the attorney who filed K. Brown's Motion was permitted to withdraw on January 7, 2019, and the Court appointed a new attorney the same day. See Order Granting Motion to Withdraw (Doc. 87). In light of these events, the Court provided K. Brown's new attorney with additional time to supplement K. Brown's pending motions, if appropriate. See Minute Entry for January 17, 2019 Status Conference (Doc. 96); February 21, 2019 Endorsed Order sua sponte extending deadline to file supplemental briefing (Doc. 108).

## I. The Indictment

On May 23, 2018, a federal grand jury returned a 38-count Indictment (Doc. 1; Indictment) against Defendants Katrina Brown (K. Brown) and Reginald Brown (R. Brown). Count One of the Indictment charges both Defendants with conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 1349. See Indictment at 1-39. Counts Two through Fourteen charge both Defendants with aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Id. at 40-44. Counts Fifteen through Twenty-Seven charge both Defendants with aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2. Id. at 44-47. Counts Twenty-Eight through Thirty-Three charge both Defendants with money laundering in violation of 18 U.S.C. §§ 1957 and 2. Id. at 48-50. Counts Thirty-Four and Thirty-Five charge only K. Brown with attempted bank fraud in violation of 18 U.S.C. §§ 1349 and 1344. Id. at 50-55. Counts Thirty-Six and Thirty-Seven charge only K. Brown with making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014. Id. at 55-57. Finally, Count Thirty-Eight charges only R. Brown with failing to file a Form 1040 in violation of 18 U.S.C. § 1014. Id. at 57-58.

In general, the Indictment alleges that in 2011, Basic Products, LLC (Basic Products) and Cowealth, LLC (Cowealth) obtained a $2,652,600 Small Business Administration loan from lender BizCapital BIDCO I, LLC (BizCapital). See Indictment at 1-4, 7-11. According to the Indictment, K. Brown served as a principal for Basic Products and Cowealth, which were both associated with her father's barbecue sauce business, KJB Specialties, LLC (KJB Specialties). Id. at 1-3. The general purpose of the SBA loan was to finance the purchase of inventory, equipment, and a manufacturing facility for the barbecue sauce business, as well as to provide working capital for the business. See id. at 7-8. Because the SBA loan authorization specified how the loan funds could be

spent, BizCapital required Basic Products to submit invoices reflecting its expenditures before authorizing any loan disbursements. Id. at 7-9.

The Indictment alleges that, in mid to late 2013, when Basic Products failed to perform as projected, K. Brown, with the assistance of R. Brown, developed a fraudulent scheme to induce BizCapital to disburse the loan funds. Id. at 10-12. Specifically, the Indictment alleges that K. Brown created two shell entities (A Plus Training and RB Packaging), for which R. Brown served as the principal and opened bank accounts. Id. at 2, 10-13. K. Brown is then alleged to have invoiced A Plus Training and RB Packaging for services that were never rendered and for products that were never sold, and then to have emailed those invoices to BizCapital for payment. Id. at 2, 10-13. The Indictment alleges that, in reliance on those fraudulent invoices, BizCapital mailed checks directly to A Plus Training and RB Packaging in the amount of the invoices, forming the basis of the counts charging mail fraud. See id. at 14, 40-44. In addition, the Indictment alleges that R. Brown deposited the checks into the A Plus Training and RB Packaging bank accounts, forming the basis of the counts charging wire fraud. Id. at 14, 44-47. The Indictment further alleges that R. Brown later withdrew the funds from the A Plus Training and RB Packaging bank accounts, and transferred the funds to K. Brown, via cash, check, or cashier's check, who then deposited the funds into the Basic Products bank account, forming the basis of the counts charging money laundering.[2] Id. at 14-15, 48-49. The

---

[2] The 61-page Indictment also contains allegations regarding a business development grant and loan obtained by KJB Specialties, LLC from the City of Jacksonville, Florida (COJ). See Indictment at 4-7. Notably, the release of the COJ grant funds was contingent on Basic Products first spending at least 2.9 million dollars, consisting of the SBA loan and COJ loan funds. Id. at 6. The Indictment alleges that after the requisite COJ loan and SBA loan funds had been disbursed to Basic Products, based in part on the alleged fake invoices that K. Brown sent to BizCapital, a COJ representative issued the grant money by wiring $210,549.99 to BizCapital for the benefit of Cowealth and Basic Products. Id. at 37-38.

Indictment alleges that both Defendants retained some of the funds for various purposes, including for personal use. Id. at 15.

The Indictment also alleges that from October 2015 through November 2016, K. Brown attempted to defraud a federally insured financial institution to obtain a merchant advance loan by submitting altered bank statements from Basic Products and KJB Specialties. Id. at 50-56. According to the government, these "fraud and false statement charges stem from the same effort —to inject additional funds in to the barbecue sauce business" once the funds from BizCapital expired in early 2015. See Response at 4. Finally, the Indictment alleges that R. Brown failed to file a 2014 tax return. Id. at 56-57.

## II. Standards

Rule 8(b) of the Federal Rules of Criminal Procedure (Rule(s)) governs joinder of defendants and offenses in cases of multiple defendants.[3] The Rule permits the government to charge two or more defendants in the same indictment

> if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

---

[3] Although Rule 8(a), which governs joinder of offenses, might appear to be applicable to K. Brown's Motion to Sever Counts, the Eleventh Circuit "has made it clear that when more than one defendant is tried in a given action, all claims of misjoinder are properly addressed under Rule 8(b)." United States v. Corbin, 734 F.2d 643, 649 n. 1 (11th Cir. 1984) (citing United States v. Marionneaux, 514 F.2d 1244, 1248 (5th Cir.1975)). The Court notes that Rule 8(b) is more restrictive than Rule 8(a), as Rule 8(a) permits joinder of claims of "the same or similar character," while Rule 8(b) does not. See Fed. R. Civ. P. 8. "If, contrary to the prevailing practice, both subsections applied to multi-party cases involving multiple counts, then some defendants could be charged with crimes wholly unrelated to the acts or transactions that justified joining the defendants, solely because those unrelated crimes are of a similar character to counts more properly charged." 1A Charles Alan Wright et al, Federal Practice and Procedure Criminal § 144 (4th ed.). Whether proceeding under Rule 8(a) or Rule 8(b), the analysis of K. Brown's Motion to Sever Counts is the same because, as discussed infra, the offenses charged in the Indictment "arise out of a series of acts or transactions" and are linked together as part of a larger plan or scheme.

Fed. R. Crim. P. 8. The Eleventh Circuit instructs that Rule 8 is to be broadly construed in favor of joinder. See United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000) (citing United States v. Weaver, 905 F.2d 1466 (11th Cir. 1990)). To determine whether initial joinder is proper, a court looks to the allegations on the face of the indictment. Dominguez, 226 F.3d at 1238-41. However, a court also may consider the representations of the government supporting joinder where the indictment does not explicitly state the connection between the charges. See id. at 1241.

"[T]o establish that the [defendants] have engaged in the 'same series of acts or transactions' under Rule 8(b) the government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." United States v. Morales, 868 F.2d 1562, 1569 (11th Cir. 1989) (citation omitted). "Joinder is permitted under Rule 8(b) even though not every defendant is charged with every offense in the indictment," United States v. Dekle, 768 F.2d 1257, 1261 (11th Cir. 1985), and "[e]ach participant need not participate in all acts or even know the other participants' roles in the ventures," United States v. Holloway, 971 F.2d 675, 679 (11th Cir. 1992) (citation omitted). Indeed, the general rule in the Eleventh Circuit "is that defendants indicted together should be tried together. This rule is particularly applicable to conspiracy cases." United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998) (citation omitted). See also Zafiro v. U.S., 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together.").

Rule 14, in turn, "recognizes that joinder, even when proper under Rule 8[ ], may prejudice either a defendant or the Government." Id. at 538-39. Rule 14 provides, in relevant part, that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts,

sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When presented with a motion pursuant to Rule 14, the Court must "balance the defendant's right to a fair trial against the public's interest in efficient and economic administration of justice." United States v. Berkman, 433 F. App'x 859, 862 (11th Cir. 2011). "In conducting this analysis, the district court must grant a motion for severance only where denial would 'result[] in compelling prejudice against which the district court [can] offer[] no protection." United States v. Whitfield, Case No. 08-60229-CR-ZLOCH, 2009 WL 3042394, at *3 (S.D. Fla. Sept. 18, 2009) (quoting United States v. Dowd, 451 F.3d 1244, 1249 (11th Cir. 2006)) (alterations in original). In United States v. Walser, the Eleventh Circuit reaffirmed that "some prejudice" is not sufficient to mandate severance; instead, the defendant carries a heavy burden to go beyond mere conclusory allegations and show that he would receive an unfair trial and suffer compelling prejudice. 3 F.3d 380, 386 (11th Cir. 1993). The court further explained:

> The test for assessing compelling prejudice is whether under all the circumstances of a particular case it is within the capacity of jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on that defendant's own acts, statements and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict. If so, "though the task be difficult," there is no compelling prejudice. Moreover, if the possible prejudice may be cured by a cautionary instruction severance is not required.

Id. at 386-87 (internal citations omitted).

Regarding requests to sever joint trials, the Supreme Court has stated that, because limiting instructions are usually sufficient to cure any prejudice, "severances need be granted only if there is a serious risk that a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment

about guilt or innocence' even if limiting instructions are given." United States v. Lopez, 649 F.3d 1222, 1234-35 (11th Cir. 2011) (quoting Zafiro, 506 U.S. at 539) (other citations omitted). "Examples of specific constitutionally protected trial rights that might be jeopardized in a joint trial are the Sixth Amendment right to confrontation and the Fifth Amendment right to remain silent. But those rights are only rarely jeopardized by a joint trial." Id. at 35 (citing United States v. Blankenship, 382 F.3d 1110, 1123 n. 24 (11th Cir. 2004)).

### III. Analysis

#### A. Motions to Sever Defendants

At the outset, the Court finds that K. Brown and R. Brown were properly joined as Defendants under Rule 8(b), because the Indictment expressly alleges that both Defendants were involved in the same series of transactions constituting the alleged conspiracy. Indeed, neither Defendant attempts to argue that their initial joinder was improper under Rule 8. Instead, both Defendants seek a severance on the basis of prejudice under Rule 14. The Court will address each asserted source of prejudice in turn.

##### 1. Mutually Antagonistic Defenses

Both Defendants contend that the Court should sever their trials because they will present mutually antagonistic defenses. See R. Brown Motion to Sever Defendants at 5; K. Brown Motion to Sever Defendants at 2-3. In doing so, R. Brown maintains that his defense at trial will be to argue that if K. Brown committed any of the offenses alleged in the Indictment, R. Brown "did not know it and did not knowingly participate in those crimes." R. Brown Motion to Sever Defendants at 5. He further asserts that "[t]his defense is completely antagonistic to [K. Brown's] position," and, as such, a "joint trial will prevent

[him] from presenting an individual defense or result in an inability to properly instruct the jury." Id. Similarly, K. Brown maintains that a joint trial will prejudice her in light of R. Brown's strategy to "shift blame to [K.] Brown in an attempt to absolve himself of wrongdoing." K. Brown Motion to Sever Defendants at 2-3. K. Brown contends that "if the jury concludes that [R.] Brown is guilty, it will perforce find [K.] Brown guilty without independently evaluating the evidence against her. Conversely, if a jury found [R.] Brown not guilty, the jury would be inclined to find [K.] Brown guilty after hearing the now-acquitted [R.] Brown blaming [K.] Brown." Id. at 3.

Supreme Court precedent instructs that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538–39. Indeed, "co-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendants' defenses." Blankenship, 382 F.3d at 1125. "Instead, 'a defendant must show that the joint trial caused him such compelling prejudice that he was deprived of a fair trial.'" United States v. Fagan, 518 F. App'x 749, 753 (11th Cir. 2013) (quoting United States v. Hill, 643 F.3d 807, 834 (11th Cir. 2011)). Here, Defendants have not demonstrated that a joint trial would deprive them of a fair trial. Aside from pointing out their mutually antagonistic defenses, neither Defendant has articulated how the joint trial will prejudice them in a legally cognizable way. The Court is not persuaded that R. Brown's asserted defense of shifting blame to K. Brown will prevent the jury from separating the issues, evidence, and Defendants as necessary at trial. Moreover, the Court anticipates that any potential for prejudice will be remedied through appropriate cautionary instructions. See Zafiro, 506 U.S. at 540. Thus, the Motions to Sever Defendants will be denied on the basis of mutually antagonistic defenses. See Zafiro, 506 U.S. at 540 (defendants did not establish compelling prejudice by arguing

that defenses, which consisted of claiming to be innocent and accusing the other of the crime, prejudiced them because the jury would conclude either "(1) that both defendants [were] lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government had proved its case beyond a reasonable doubt"); Fagan, 518 F. App'x at 753 (defendants prosecuted for mail fraud and conspiracy to commit mail and wire fraud related to mortgage fraud scheme did not establish compelling prejudice, where one defendant claimed his co-defendants fraudulently completed loan applications without his knowledge, second defendant who handled the loan applications claimed she was an unknowing conduit for the fraud, and third defendant claimed she was given closing documents by first defendant, signed them without reading them, and relied on second defendant to conduct closings).

**2. Spillover**

R. Brown also contends that "[v]irtually all of the evidence in this case will focus on whether [K.] Brown made material misrepresentations to financial institutions as alleged," and that the "spillover effect" of this evidence will unfairly prejudice him at trial. R. Brown Motion to Sever Defendants at 3. Upon consideration, the Court finds that this argument fails to establish the requisite compelling prejudice. First, R. Brown's argument is too speculative and conclusory to demonstrate prejudice. Indeed, R. Brown has not identified any particular evidence that will spillover from the government's case against K. Brown or articulated how that evidence will prejudice him or otherwise prevent the jury from making an individualized determination as to each charge against him. Moreover, it appears that the government would be permitted to introduce evidence relating to K. Brown at a separate trial, as that evidence would be relevant to establish the alleged conspiracy and the underlying mail and wire fraud and money laundering charges against R. Brown.

Finally, a curative instruction can resolve R. Brown's concern about spillover evidence should the issue arise at trial. See United States v. Kennard, 472 F.3d 851, 859 (11th Cir. 2006) ("[A] court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt."); United States v. Smith, 918 F.2d 1501, 1509-10 (11th Cir. 1990) ("A defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the evidence at trial is applicable only to co-defendants. The possible prejudicial effects of such disparity can be significantly alleviated if the trial judge is careful to instruct the jury that it must consider the evidence against each defendant on a separate and independent basis.") (internal citation omitted). As such, R. Brown's Motion to Sever Defendants will be denied on the basis of spillover evidence.

### 3. R. Brown's Statements

K. Brown argues that her rights under the Confrontation Clause will be violated by a joint trial if the government introduces R. Brown's statements against her at trial and R. Brown does not testify. See K. Brown Motion to Sever Defendants at 2. The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right "to be confronted with the witnesses against" her and to cross-examine them. U.S. Const. amend. VI. In Bruton v. United States, the Supreme Court held that the admission of a non-testifying co-defendant's confession inculpating the defendant generally violates the defendant's rights under the Confrontation Clause, even if the jury is instructed to consider the confession only against the co-defendant.[4] 391 U.S. 123, 126 (1968).

---

[4] The Court notes that this general rule is subject to narrow exceptions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 200 (1987) (holding that the Confrontation Clause was not violated by the admission of a non-testifying co-defendant's confession where the district court issued a proper limiting instruction and the confession was redacted to eliminate the defendant's name and any reference to her existence); United States v. Beale, 921 F.2d 1412, 1425 (11th Cir. 1991), cert. denied, 502 U.S. 829 (1991) ("[The Eleventh

Because the government has represented that it will not introduce R. Brown's statements against K. Brown at trial if R. Brown does not testify, see Response at 14, there is no Bruton issue before the Court. See United States v. Horton, 522 F. App'x 456, 461 (11th Cir. 2013) ("Bruton is only violated where a statement is offered of a non-testifying codefendant. The record shows that Horton's codefendant testified at trial and that Horton had the opportunity to cross-examine her. Accordingly, there was no Bruton error.") (citing Bruton, 391 U.S. at 135-36; United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993)). Accordingly, K. Brown's Motion to Sever Defendants is due to be denied on the basis of a potential Bruton issue.

### 4. K. Brown's Affidavit

Finally, although neither Defendant has explicitly raised this issue in their respective Motions, the Court notes that on October 22, 2018, R. Brown filed an affidavit completed by K. Brown as an exhibit in support of his Motion to Sever Defendants. See Defendant's Notice of Filing Exhibit (Doc. 68; Affidavit). In the Affidavit, K. Brown avers that "if the motion for severance is granted, I will testify as a wittness [sic] in the trial of [R.] Brown, in which case, I will provide exculpatory testimony to the Court." Id. at 3. K. Brown further avers that she "did not conspire with [R. Brown] in any manner or forms as stated in" the Indictment. Id. To the extent R. Brown argues that severance is required based on his need for K. Brown's exculpatory testimony, the Court finds that R. Brown is not entitled to relief on this basis.

---

Circuit] has read Bruton to exclude only those statements by a non-testifying defendant which directly inculpate a co-defendant.").

In United States v. Cobb, the Eleventh Circuit set out the framework for addressing severance based on a defendant's asserted need for a co-defendant's exculpatory testimony:

> Where a defendant argues for severance on the ground that it will permit the exculpatory testimony of a co-defendant, he "must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." United States v. Machado, 804 F.2d 1537, 1544 (11th Cir. 1986); see also United States v. Harris, 908 F.2d 728, 739 (11th Cir. 1990); United States v. Martinez, 486 F.2d 15, 22 (5th Cir. 1973); Byrd v. Wainwright, 428 F.2d 1017, 1019-20 (5th Cir. 1970). Even if the defendant makes such a showing, the court must still "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Machado, 804 F.2d at 1544; accord United States v. Harris, 908 F.2d 728, 739 (11th Cir. 1990) (quoting United States v. DeSimone, 660 F.2d 532, 540 (5th Cir. 1981)).

185 F.3d 1193, 1197 (11th Cir. 1999). In reversing the district court's denial of Cobb's motion to sever based on his asserted need for his co-defendant's testimony, the Eleventh Circuit noted that it was dealing with "one of those rare cases" where the need for the proffered testimony was clear. Id. at 1197. The "sole evidence" against Cobb on the charge of receiving stolen funds was the testimony of a woman who claimed to have seen Cobb receive the money from his co-defendant. Id. at 1198. Cobb's co-defendant offered to testify on Cobb's behalf at a separate trial, and his testimony would have directly contradicted the woman's testimony and the only evidence against Cobb. Id. Notably, because the joint trial in Cobb took only one day to complete, "the cost to the [judicial] system of a severance . . . [was] minimal." Id. at 1199.

Unlike Cobb, this does not appear to be "one of those rare cases" where the need for the proffered co-defendant's testimony is clear. The Affidavit submitted by R. Brown does not contain the type of specific and exonerative facts necessary to support severance. See United States v. Novaton, 271 F.3d 968, 990 (11th Cir. 2001) ("[S]tatements concerning the testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance."). In fact, the Affidavit does not contain any factual information and consists of mere conclusory statements and bare denials. See id. (rejecting as "conclusory" the co-conspirator's affidavit that stated only that the police officer who provided protection for the drugs in that case "did not conspire with me, or to my knowledge with anyone else, to possess with intent to distribute cocaine"). Importantly, R. Brown has not offered any details about the substance of K. Brown's proposed testimony or otherwise attempted to establish the need for her testimony. Indeed, R. Brown does not even discuss this issue in his Motion to Sever Defendants. Thus, the Court finds that R. Brown has failed to make the threshold showing required by Cobb. The Court also finds that the interests of judicial administration and economy weigh heavily against severance in this 38-count conspiracy case, which is currently scheduled for a two-week jury trial. Accordingly, R. Brown's Motion to Sever Defendants will not be granted on the basis of the Affidavit.

**B.     K. Brown's Motion to Sever Counts**

In her separate request to sever counts, K. Brown challenges the initial joinder of Counts Thirty-Four through Thirty-Seven with the other counts against her pursuant to Rule 8. See Motion to Sever Counts. Specifically, K. Brown maintains that Counts Thirty-Four through Thirty-Seven—attempted bank fraud and making false statements to a federally insured institution—were improperly joined because the offenses involve

different conduct, occurred over a different time period, and have no common evidence with the other counts in the Indictment. Id. at 2. In response, the government asserts that the attempted bank fraud charges and false statement charges are tied by a common thread to each other and to the other 33 charges against K. Brown. See Response at 8-11. In support, the government maintains that the conduct described in Counts Thirty-Four through Thirty-Seven involves the same entities (Basic Products and KJB Specialties) and common scheme (creating and submitting allegedly fraudulent documents to lenders to obtain funds for those businesses) as in the other 33 counts against K. Brown. Id. In addition, the government contends that K. Brown made the false statements alleged in Counts Thirty-Four through Thirty-Seven to potential lenders because her ability to obtain funds from BizCapital had expired. Id. at 10.

"The litmus test for misjoined counts under Rule 8(b) is whether the acts described in the indictment are tied by a 'common thread' to each other or the participants." United States v. McLain, 823 F.2d 1457, 1467 (11th Cir. 1987), overruled on other grounds as recognized by United States v. Watson, 866 F.2d 381 (11th Cir. 1989).[5] Based on the government's Response and the allegations of the Indictment, the Court finds that Counts Thirty-Four through Thirty-Seven were properly joined with the other charges against K. Brown because they are tied together with the other counts by a common thread—K. Brown's alleged use of fraudulent methods via the same legal entities to obtain funds from lenders.

---

[5] In Watson, the Eleventh Circuit noted that the Supreme Court's decision in United States v. Lane, 474 U.S. 438 (1986), "effectively overruled" McLain "to the extent that" McLain held or implied that misjoinder under Rule 8 was inherently prejudicial. See Watson, 866 F.2d at 385 n. 3.

K. Brown additionally argues that, even if Counts Thirty-Four through Thirty-Seven were properly joined under Rule 8, the Court should sever them under Rule 14. In support, K. Brown asserts that she "may present separate defense [sic] on various charges, and a joint trial could 'embarrass[ ] or confound[ ]' her in the presentation of those defenses." Id. at 3 (citing United States v. Pierce, 733 F.2d 1474, 1477 (11th Cir. 1984)).[6] However, K. Brown has not attempted to suggest how she will be embarrassed or confounded in presenting separate defenses as to separate counts. Indeed, she has not even identified the separate defenses she intends to present. K. Brown's conclusory arguments are insufficient to demonstrate compelling prejudice. See United States v. Miller, 255 F.3d 1282, 1289 (11th Cir. 2001) (finding that defendant's "general allegation of some prejudice" did not meet the "heavy burden of demonstrating . . . 'specific and compelling prejudice as a result of the denial of severance'"). K. Brown further argues that the jury could "use evidence admissible as to one count 'to infer a criminal disposition' on the part of [K. Brown] as to the other counts." Motion to Sever Counts at 3. However, K. Brown again fails to offer any specifics in support of her argument. Thus, the Court finds that she has not established compelling prejudice such that severance is required. Accordingly, her Motion to Sever Counts will be denied.

## IV. Conclusion

In short, the Court finds that the Defendants and counts were properly joined under Rule 8, and that neither Defendant has carried the heavy burden of demonstrating compelling prejudice under Rule 14. See Hill, 643 F.3d at 829 ("In this case the three

---

[6] Notably, the court in Pierce found that the defendant had "not established he was embarrassed or confounded in presenting separate defenses. He presents no argument on that issue." Pierce, 733 F.2d at 1477.

- 15 -

conspiracies and the various substantive counts arrayed around them were properly joined because each of the charges arose out of Hill's master scheme to defraud lenders through a common plan and design. The fact that Hill used a different set of actors to perform the three acts of his play did not transform it into three different plays."); United States v. Martinez, 675 F. App'x 963, 969 (11th Cir. 2017) (affirming joint trial of two defendants for conspiracy to commit bank fraud, even though defendants did not interact and each was charged with counts that did not involve the other, because each transaction for which they were charged was part of the overall conspiracy).

In addition, the Court anticipates that any potential for prejudice may be remedied by instructing the jury that it must "give separate consideration to each individual defendant and to each separate charge against him [or her]," and that "[e]ach defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her." Zafiro, 506 U.S. at 541. Further, a joint trial appropriately advances the interests of judicial economy and administration, without compromising the rights of either Defendant. However, the Court recognizes its "continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, 362 U.S. 511, 516 (1960). Thus, these issues can be revisited if necessary as trial approaches.

Accordingly, it is

**ORDERED:**

1. Defendant Reginald Brown's Motion to Sever the Trial of Reginald Brown From the Trial of Katrina Brown and Memorandum of Law (Doc. 59) is **DENIED**.

2. Defendant Katrina Brown's Motion to Sever Counts Thirty-Four Through Thirty-Seven (Doc. 65) is **DENIED**.

3. Defendant Katrina Brown's Motion to Sever Defendants (Doc. 66) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on April 3, 2019.

MARCIA MORALES HOWARD
United States District Judge

Lc23

Copies to:

Defendants
Counsel of Record