**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.  Case No.  3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants' motions to dismiss Counts Fifteen through Thirty-Three of the Indictment as multiplicitous.  See Reginald Brown's Motion to Dismiss Counts 15-33 of the Indictment (Multiplicity) and Memorandum of Law (Doc 60; R. Brown Motion), filed on October 18, 2018; Katrina Brown's Motion to Dismiss Counts Fifteen Through Thirty-Three (Doc. 67; K. Brown Motion), filed on October 19, 2018.  The government filed a response to the Motions on November 1, 2018.  See United States' Memorandum Opposing Defendants' Motions to Dismiss Counts Fifteen Through Thirty-Three (Doc. 73; Response).   Thus, the Motions are ripe for review.[1]

**I.    The Indictment**

On May 23, 2018, a federal grand jury returned a 38-count Indictment (Doc. 1; Indictment) against Defendants Katrina Brown (K. Brown) and Reginald Brown (R. Brown). Relevant to the instant Motions, Count One of the Indictment charges both Defendants with conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 1349.  See

---

[1] The Court notes that the attorney who filed K. Brown's Motion was permitted to withdraw on January 7, 2019, and the Court appointed a new attorney the same day.  See Order Granting Motion to Withdraw (Doc. 87).   In light of these events, the Court provided K. Brown's new attorney with additional time to supplement K. Brown's pending motions, if appropriate.  See Minute Entry for January 17, 2019 Status Conference (Doc. 96); February 21, 2019 Endorsed Order sua sponte extending deadline to file supplemental briefing (Doc. 108).

Indictment at 1-39.  Counts Two through Fourteen charge both Defendants with aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  Id. at 40-44.  Counts Fifteen through Twenty-Seven charge both Defendants with aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2.  Id. at 44-47.  Counts Twenty-Eight through Thirty-Three charge both Defendants with money laundering in violation of 18 U.S.C. §§ 1957 and 2.[2]  Id. at 48-50.

In general, the Indictment alleges that in 2011, Basic Products, LLC (Basic Products) and Cowealth, LLC (Cowealth) obtained a $2,652,600 Small Business Administration loan from lender BizCapital BIDCO I, LLC (BizCapital).  See id. at 1-4, 7-11.  According to the Indictment, K. Brown served as a principal for Basic Products and Cowealth, which were both associated with her father's barbecue sauce business, KJB Specialties, LLC (KJB Specialties).  Id. at 1-3.  The general purpose of the SBA loan was to finance the purchase of inventory, equipment, and a manufacturing facility for the barbecue sauce business, as well as to provide working capital for the business.  Id. at 7-8.  Because the SBA loan authorization specified how the loan funds could be spent, BizCapital required Basic Products to submit invoices reflecting its expenditures before authorizing any loan disbursements.  Id. at 7-9.

The Indictment alleges that, in mid to late 2013, when Basic Products failed to perform as projected, K. Brown, with the assistance of R. Brown, developed a fraudulent scheme to induce BizCapital to disburse the loan funds.  Id. at 10-12.  Specifically, the

---

[2] The remaining five counts are not relevant to the instant Motions.  Counts Thirty-Four and Thirty-Five charge only K. Brown with attempted bank fraud in violation of 18 U.S.C. §§ 1349 and 1344.  See Indictment at 50-55.  Counts Thirty-Six and Thirty-Seven charge only K. Brown with making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014.  Id. at 55-57.  Finally, Count Thirty-Eight charges only R. Brown with failing to file a Form 1040 in violation of 18 U.S.C. § 1014.  Id. at 57-58.

Indictment alleges that K. Brown created two shell entities (A Plus Training and RB Packaging), for which R. Brown served as the principal and opened bank accounts. Id. at 2, 10-13. K. Brown is then alleged to have invoiced A Plus Training and RB Packaging for services that were never rendered and for products that were never sold, and then to have emailed those invoices to BizCapital for payment. Id. at 2, 10-13. The Indictment alleges that, in reliance on those fraudulent invoices, BizCapital mailed checks directly to A Plus Training and RB Packaging in the amount of the invoices, forming the basis of the counts charging mail fraud. Id. at 14, 40-44. The Indictment further alleges that R. Brown then deposited the checks into the A Plus Training and RB Packaging bank accounts, forming the basis of the counts charging wire fraud. Id. at 14, 44-47. In addition, the Indictment alleges that R. Brown later withdrew the funds from the A Plus Training and RB Packaging bank accounts, and transferred the funds to K. Brown, via cash, check, or cashier's check, who then deposited the funds into the Basic Products bank account, forming the basis of the counts charging money laundering.[3] Id. at 14-15, 48-49. The Indictment alleges that both Defendants retained some of the funds for various purposes, including for personal use. Id. at 15.

## II. Analysis

In their Motions, Defendants move to dismiss Counts Fifteen through Thirty-Three (wire fraud and money laundering) of the Indictment pursuant to Rule 12(b)(3)(B)(ii) of the

---

[3] The 61-page Indictment also contains allegations regarding a business development grant and loan obtained by KJB Specialties from the City of Jacksonville, Florida (COJ). See Indictment at 4-7. Notably, the release of the COJ grant funds was contingent on Basic Products first spending at least 2.9 million dollars, consisting of the SBA loan and COJ loan funds. Id. at 6. The Indictment alleges that after the requisite COJ loan and SBA loan funds had been disbursed to Basic Products, based in part on the alleged fake invoices that K. Brown sent to BizCapital, a COJ representative issued the grant money by wiring $210,549.99 to BizCapital for the benefit of Cowealth and Basic Products. Id. at 37-38.

Federal Rules of Criminal Procedure (Rule(s)).  See generally Motions.  In support, Defendants argue that the wire fraud and money laundering counts are multiplicitous, and thus, violate the double jeopardy clause of the Fifth Amendment.  See id.  "An indictment is multiplicitous if it charges a single offense in more than one count."  United States v. Williams, 527 F.3d 1235, 1241 (11th Cir. 2008) (citation omitted).  Multiplicitous counts violate the Double Jeopardy Clause of the Fifth Amendment, which "protects a defendant against the imposition of multiple punishments for the same offense."  United States v. Dowd, 451 F.3d 1244, 1251 (11th Cir. 2006).  To determine whether an indictment is multiplicitous, the Eleventh Circuit applies the test laid out by the Supreme Court in Blockburger,[4] "verifying that each count requires an element of proof that the other counts do not require."  Williams, 527 F.3d at 1241 (citation omitted).  See also United States v. Gonzalez, 834 F.3d 1206, 1219 (11th Cir. 2016) ("We have regularly utilized the test laid out by the Supreme Court in [Blockburger], in deciding whether an indictment is multiplicitous.") (collecting cases).

In this case, the elemental analysis set forth in Blockburger demonstrates that the mail fraud, wire fraud, and money laundering counts are not multiplicitous because each count requires an element of proof that the others do not.[5]  To convict a defendant of mail fraud under 18 U.S.C. § 1341, "the [g]overnment must show beyond a reasonable doubt: (1) intentional participation in a scheme to defraud a person of money or property, and (2)

---

[4] Blockburger v. United States, 284 U.S. 299, 304 (1932).

[5] In their Motions, Defendants specifically seek dismissal of only the wire fraud and money laundering counts.  However, both Defendants argue that the conduct underlying the mail fraud, wire fraud, and money laundering counts should constitute only one criminal offense.  See R. Brown Motion at 4-5; K. Brown Motion at 2-3.  Therefore, in light of this argument, the Court's analysis under Blockburger will include the mail fraud counts as well.

use of the mails in furtherance of the scheme."[6]  United States v. Hawkins, 905 F.2d 1489, 1496 (11th Cir. 1990) (internal quotation marks and citations omitted).  To convict a defendant of wire fraud under 18 U.S.C. § 1343, the government must prove beyond a reasonable doubt that "(1) the defendant participated in a scheme or artifice to defraud; (2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud."[7]  Williams, 527 F.3d at 1240.  To convict a defendant of money laundering under 18 U.S.C. § 1957, the government must prove beyond a reasonable doubt "(1) that the defendant knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, and (2) that the property is derived from specified unlawful activity."[8]  United States v. Molina, 413 F. App'x 210, 213 (11th Cir. 2011) (citations omitted).

---

[6] Section 1341 provides in part:
> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

[7] Section 1343 provides in part:
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

[8] Section 1957(a) provides in part:
> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

Although their elements are nearly identical, mail fraud and wire fraud are indeed separate offenses, as mail fraud requires the "use of the mails" in furtherance of the scheme to defraud, while wire fraud requires "the use of interstate wire transmissions." See 18 U.S.C. §§ 1341, 1343.  See also Caldwell v. United States, 904 F.2d 40 (Table), 1990 WL 71241 (9th Cir. 1990) ("[S]ections 1341 (mail fraud) and 1343 (wire fraud) define separate offenses that require proof of different elements."); United States v. Langford, Case No. 08-CR-245-S, 2009 WL 10671369, at *5 (N.D. Ala. July 2, 2009), report and recommendation adopted, 2009 WL 10671793 (July 28, 2009) (same); United States v. Bobo, Case No. 1:06-CR-0172-2-TWT, 2007 WL 962978, at *1 (N.D. Ga. Feb. 20, 2007), report and recommendation adopted, 2007 WL 9676896 (Mar. 23, 2007) (same).  In addition, money laundering does not have a single element in common with mail or wire fraud.  Moreover, the Eleventh Circuit has specifically held that "[m]oney laundering is an offense to be punished separately from an underlying criminal offense."[9]  United States v. Christo, 129 F.3d 578, 579 (11th Cir. 1997) (citing United States v. Edgmon, 952 F.2d 1206, 1213 (10th Cir. 1991)).  See also United States v. Rude, 88 F.3d 1538, 1546 (9th Cir. 1996) ("It is well established . . . that money laundering and wire fraud are separate offenses.").  Accordingly, because the offenses of mail fraud, wire fraud, and money laundering each require an element of proof that the others do not, the Indictment satisfies the Blockburger test and is therefore not multiplicitous.

---

[9] "The main issue in a money laundering charge . . . is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur."  Christo, 129 F.3d at 579-80.  Here, the alleged "completed offense" is each wire fraud charge.  To the extent Defendants challenge whether the government will be able to prove each wire fraud offense was complete before any money laundering occurred, the Court finds that to be an evidentiary issue for trial.

Notwithstanding the Eleventh Circuit precedent to the contrary, Defendants maintain that "the Blockburger test should not control the analysis of whether counts in an indictment are multiplicitous," and urge the Court to apply the Eleventh Circuit's holding in United States v. Langford, 946 F.2d 798, 799 (11th Cir. 1991) instead.  See R. Brown Motion at 4; K. Brown Motion at 2-3.   In Langford, the defendant "was charged with three counts of securities fraud, all based on the same scheme to defraud and on the same purchase of securities[.]"  946 F.2d at 804.  The issue before the court was "whether the use of multiple mailings or instrumentalities of interstate commerce in furtherance of a conspiracy to defraud a purchaser of securities can form the basis of multiple counts of an indictment under the provisions of 15 U.S.C. §§ 78j(b), 78ff, and Rule 10b–5."  Id. at 799.  In concluding that it could not, the Eleventh Circuit recognized that the "allowable unit of prosecution" under section 78j(b) and Rule 10(b)-5 is "the use of a manipulative device or contrivance, which . . . can be any false statement of material fact in connection with a discrete purchase or sale of a security."  Id. at 803.  Thus, the Court concluded that "[t]o avoid the vices of multiplicity in securities fraud cases, each count of the indictment must be based on a separate purchase or sale of securities and each count must specify a false statement of material fact—not a full-blown scheme to defraud—in connection with that purchase or sale."  Id. at 804 (emphasis added).

Defendants contend that the unit of prosecution in this case is each alleged use of a fraudulent invoice to induce BizCapital to release SBA loan funds, and, as such, they should not be separately prosecuted for each act of mail fraud, wire fraud, and money laundering alleged to have resulted from the use of each fraudulent invoice.  See R. Brown Motion at 4-5.; K. Brown Motion at 3.   Specifically, R. Brown argues that "[m]ailing

a check, depositing a check into an account and having funds wired to fund the check, and then transferring those funds into a different account are all part of the same episode or unit of prosecution (scheme to defraud)." R. Brown Motion at 4-5. He asserts that the government should not be permitted "to relabel the same conduct under three separate statutory provisions." Id. at 5.

Upon review, the Court finds that Defendants' reliance on Langford in support of these arguments is misplaced. First, the Eleventh Circuit explicitly limited its holding in Langford to securities fraud cases and therefore its reasoning is simply not applicable to this case. See Langford, 946 F.2d at 804. See also United States v. Smith, 231 F.3d 800, 815 n. 16 (11th Cir. 2000) ("The Langford holding was . . . explicitly limited to securities fraud cases."). Assuming arguendo that the court's holding in Langford is applicable outside of the securities fraud context, the Court finds that the facts of Langford are easily distinguishable from the facts of this case. The court in Langford was addressing three counts of the same criminal offense—securities fraud—based on only one purchase of securities. Here, however, the Indictment alleges that the use of each fraudulent invoice led to three different criminal offenses—mail fraud, wire fraud, and money laundering. Moreover, contrary to Defendants' assertions, the Indictment does not merely relabel the same conduct under three different charges. Instead, the Indictment alleges that K. Brown's emailing of a fake invoice to BizCapital, which caused BizCapital to mail checks to R. Brown's companies, constitutes mail fraud. The Indictment alleges that R. Brown's depositing of BizCapital's check into the A Plus Training and RB Packaging bank accounts constitutes wire fraud. Finally, the Indictment alleges that R. Brown's subsequent withdrawal of the funds from the A Plus Training and RB Packaging bank accounts and

the depositing of the funds into the Basic Products account constitutes money laundering. Thus, each count of the Indictment alleges distinct criminal conduct.   As such, the Motions are due to be denied.

Accordingly, it is

**ORDERED:**

1.   Defendant Reginald Brown's Motion to Dismiss Counts 15-33 of the Indictment (Multiplicity) and Memorandum of Law (Doc. 60) is **DENIED**.

2.   Defendant Katrina Brown's Motion to Dismiss Counts Fifteen Through Thirty-Three (Doc. 67) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on April 3, 2019.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc23

Copies to:

Defendants
Counsel of Record