**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.  Case No. 3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendants' renewed motions to sever. See Defendant's Motions to Sever Defendants and Counts by Providing Officially Exculpatory Testimony (Doc. 215; Renewed Motion), filed on August 27, 2019; Third Motion to Sever the Trial of Reginald Brown from the Trial of Katrina Brown and Memorandum of Law (Out of Time) (Doc. 224; Third Motion), filed on August 29, 2019. The government filed a response in opposition to both Motions on August 29, 2019. See United States' Memorandum Opposing Defendants' Motions to Sever Defendants and Counts (Doc. 225; Response). Thus, the Motions are ripe for review.

## I.  Background

### A.  Indictment

On May 23, 2018, a federal grand jury returned a 38-count Indictment (Doc. 1; Indictment) against Defendants Katrina Brown and Reginald Brown. Count One of the Indictment charges both Defendants with conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 1349. See Indictment at 1-39. Counts Two through Fourteen charge both Defendants with aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Id. at 40-44. Counts Fifteen through Twenty-Seven charge both

Defendants with aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2. Id. at 44-47. Counts Twenty-Eight through Thirty-Three charge both Defendants with money laundering in violation of 18 U.S.C. §§ 1957 and 2. Id. at 48-50. Counts Thirty-Four and Thirty-Five charge only Katrina Brown with attempted bank fraud in violation of 18 U.S.C. §§ 1349 and 1344. Id. at 50-55. Counts Thirty-Six and Thirty-Seven charge only Katrina Brown with making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014. Id. at 55-57. Finally, Count Thirty-Eight charges only Reginald Brown with failing to file a Form 1040 in violation of 18 U.S.C. § 1014. Id. at 57-58.

As the Court has discussed in prior orders, the Indictment alleges that in 2011, Basic Products, LLC and Cowealth, LLC obtained a $2,652,600 Small Business Administration loan from lender BizCapital BIDCO I, LLC. See Indictment at 1-4, 7-11. According to the Indictment, Katrina Brown served as a principal for Basic Products and Cowealth, which were both associated with her father's barbecue sauce business, KJB Specialties, LLC. Id. at 1-3. The general purpose of the SBA loan was to finance the purchase of inventory, equipment, and a manufacturing facility for the barbecue sauce business, as well as to provide working capital for the business. See id. at 7-8. Because the SBA loan authorization specified how the loan funds could be spent, BizCapital required Basic Products to submit invoices reflecting its expenditures before authorizing any loan disbursements. Id. at 7-9.

The Indictment alleges that, in mid to late 2013, when Basic Products failed to perform as projected, Katrina Brown, with the assistance of Reginald Brown, developed a fraudulent scheme to induce BizCapital to disburse the loan funds. Id. at 10-12. Specifically, the Indictment alleges that Katrina Brown created two shell entities (A Plus

Training and RB Packaging), for which Reginald Brown served as the principal and opened bank accounts. Id. at 2, 10-13. Katrina Brown is then alleged to have invoiced A Plus Training and RB Packaging for services that were never performed and for products that were never sold, and then to have emailed those invoices to BizCapital for payment. Id. at 2, 10-13. The Indictment alleges that, in reliance on those fraudulent invoices, BizCapital mailed checks directly to A Plus Training and RB Packaging in the amount reflected in the invoices, forming the basis of the counts charging mail fraud. See id. at 14, 40-44. In addition, the Indictment alleges that Reginald Brown deposited the checks into the A Plus Training and RB Packaging bank accounts, forming the basis of the counts charging wire fraud. Id. at 14, 44-47. The Indictment further alleges that Reginald Brown later withdrew the funds from the A Plus Training and RB Packaging bank accounts, and transferred the funds to Katrina Brown, via cash, check, or cashier's check, who then deposited the funds into the Basic Products bank account, forming the basis of the counts charging money laundering.[1] Id. at 14-15, 48-49. The Indictment alleges that both Defendants retained some of the funds for various purposes, including for personal use. Id. at 15.

The Indictment also alleges that from October 2015 through November 2016, Katrina Brown attempted to defraud a federally insured financial institution to obtain a merchant advance loan by submitting altered bank statements from Basic Products and

---

[1] The 61-page Indictment also contains allegations regarding a business development grant and loan obtained by KJB Specialties from the City of Jacksonville, Florida (COJ). See Indictment at 4-7. Notably, the release of the COJ grant funds was contingent on Basic Products first spending at least 2.9 million dollars, consisting of the SBA loan and COJ loan funds. Id. at 6. The Indictment alleges that after the requisite COJ loan and SBA loan funds had been disbursed to Basic Products, based in part on the alleged fake invoices that Katrina Brown sent to BizCapital, a COJ representative issued the grant money by wiring $210,549.99 to BizCapital for the benefit of Cowealth and Basic Products. Id. at 37-38.

KJB Specialties.  Id. at 50-56.  Finally, the Indictment alleges that Reginald Brown failed to file a 2014 tax return.  Id. at 56-57.

**B.     Procedural History**

At the Defendants' arraignment on June 25, 2018, the Court granted Defendants' unopposed motion to continue the trial to the September 2018 trial term, see Order (Doc. 44), and set a July 31, 2018 motions deadline.  See Scheduling Order (Doc. 45) (setting July 31, 2018, as the deadline for all "dispositive motions, motions to suppress and other non-discovery motions").  At a status conference on August 14, 2018, the Court granted Defendants' unopposed motion to continue the trial again, this time to February 4, 2019. See Clerk's Minutes (Doc. 55).  The Court also extended the motions deadline to October 19, 2018.  Id.

Both Defendants filed multiple substantive motions before the October 19, 2018 motions deadline, including motions to sever.  See, e.g., Defendant Reginald Brown's Motion to Sever the Trial of Reginald Brown From the Trial of Katrina Brown and Memorandum of Law (Doc. 59), filed on October 17, 2018; Defendant Katrina Brown's Motion to Sever Counts Thirty-Four Through Thirty-Seven (Doc. 65), filed on October 19, 2018; Defendant Katrina Brown's Motion to Sever Defendants (Doc. 66), filed on October 19, 2018.  Notably, on October 22, 2018, Reginald Brown filed an affidavit completed by Katrina Brown as an exhibit in support of his motion to sever defendants.  See Defendant's Notice of Filing Exhibit (Doc. 68; First Affidavit).  In the First Affidavit, Katrina Brown averred that "if the motion for severance is granted, I will testify as a wittness [sic] in the trial of Mr. Reginald Brown, in which case, I will provide exculpatory testimony to the Court."  Id. at 3. Katrina Brown further averred that she "did not conspire with Co-Defendant Mr. Reginald Brown in any manner or forms as stated in" the Indictment.  Id.

On December 21, 2018, Katrina Brown's court-appointed counsel (Darcy Galnor) moved to withdraw from the case, see Motion to Withdraw (Doc. 82), and on January 3, 2019, the Court granted the Motion to Withdraw and later appointed a new attorney to represent Katrina Brown (Richard Landes). See Orders (Docs. 87 & 92). At a status hearing held on January 17, 2019, Katrina Brown's newly appointed counsel requested a lengthy continuance to the August 2019 trial term, and the Court granted that request over Reginald Brown's objection. See Clerk's Minutes (Doc. 96). In light of these events, the Court also provided Katrina Brown's new counsel additional time to supplement her pending motions, if appropriate. Id. See also Endorsed Order sua sponte extending deadline to file supplemental briefing to March 7, 2019 (Doc. 108). Katrina Brown did not submit any supplemental briefing.

On April 3, 2019, the Court entered an order denying Defendants' original motions to sever. See Order Denying First Motions to Sever (Doc. 114). Among other things, the Court determined that Katrina Brown's First Affidavit did not serve as a basis for severing Defendants' trial. In doing so, the Court stated that the First Affidavit consisted of "mere conclusory statements and bare denials" and therefore did "not contain the type of specific and exonerative facts necessary to support severance." Id. at 13. The Court further found that Reginald Brown's motion to sever was similarly insufficient, as it did not even discuss Katrina Brown's First Affidavit or attempt to establish the need for her testimony at trial. Id.

At a status of counsel hearing held on July 31, 2019—less than three weeks before jury selection was scheduled to begin on August 14, 2019—Katrina Brown notified the Court that she wished to represent herself. See Defendant Katrina Brown's Motion for a Status Conference Regarding Representation (Doc. 155); Order Granting Defendant's

Motion for a Status Conference Regarding Representation (Doc. 156); Clerk's Minutes (Doc. 164). The Court conducted a lengthy Faretta[2] inquiry the following day, after which the Court determined that Katrina Brown had "knowingly, intentionally, voluntarily, and freely waived her right to counsel" and permitted Katrina Brown to represent herself in all further proceedings. See Order (Doc. 166). Notably, Katrina Brown's decision to proceed pro se prompted Reginald Brown to file a second motion to sever. See Second Motion to Sever the Trial of Reginald Brown from the Trial of Katrina Brown and Memorandum of Law (Doc. 173), filed on August 5, 2019. Among other things, Reginald Brown argued that he now "face[d] the prospect of sitting helplessly by while Ms. Brown flails about trying to be both lawyer and client. This spectacle can only prejudice his case in the eyes of the jury and make it all but impossible for the jury to reach an individualized verdict as to him." Id. at 2.

On August 2, 2019, Katrina Brown filed a motion requesting a six-month continuance of the trial, see Defendant's Motion to Continue Trial and Pretrial Motions Dates (Doc. 170), which both the government and Reginald Brown opposed, see United States' Response to Defendant Katrina Brown's Motion to Continue Trial (Doc. 171). At a hearing on the Motion to Continue held on August 6, 2019, the Court denied Reginald Brown's second motion to sever. In doing so, the Court noted that although the Eleventh Circuit has recognized the possibility of prejudice where a defendant is joined for trial with an individual who is proceeding pro se, such a trial is not per se prejudicial. The Court concluded that Eleventh Circuit precedent suggested sufficient precautionary measures

---

[2] See Faretta v. California, 422 U.S. 806 (1975).

the Court could take to prevent prejudice caused by Katrina Brown's pro se status.³  See United States v. Veteto, 701 F.2d 136, 139 (1983); United States v. Knowles, 66 F.3d 1146, 1160 (11th Cir. 1995); United States v. Brown, 227 F. App'x 795, 799-800 (11th Cir. 2007).  The Court also denied Katrina Brown's request to continue the trial for another six months.  See Clerk's Minutes (Doc. 176).  However, the Court granted a five-week continuance and rescheduled the trial to begin with jury selection on September 18, 2019. See id.  In doing so, the Court stated that because the motions deadline had long since passed, and in light of the dispositive motions that already had been filed by her attorneys and ruled on by the Court, the Court would not allow Katrina Brown to file any further dispositive motions.  Id.  Nevertheless, in light of her recent decision to represent herself, the Court gave Katrina Brown until September 18, 2019, to file proposed jury instructions, id., and until August 21, 2019, to file motions in limine, see Order (Doc. 193).⁴  The Court did not extend any of the motions deadlines for Reginald Brown.

### C. The Instant Motions to Sever

On August 27, 2019, Katrina Brown submitted the instant Renewed Motion, along with a supporting affidavit, see Renewed Motion at 4-10 (Second Affidavit), in which Katrina Brown states that her prior attorneys "refused to assist in preparation of Affidavit

---

³ Although Reginald Brown filed his second motion to sever well after the motions deadline, the Court found good cause to consider his argument regarding potential prejudice based on Katrina Brown's belated decision to represent herself, as it was obviously based on new information.  In doing so, the Court did not, however, consider the arguments previously raised by Reginald Brown that he repeated in the second motion to sever.

⁴ Although the Court instructed Katrina Brown that no further dispositive motions would be entertained, that did not prevent Katrina Brown from filing two dispositive motions seeking to dismiss the Indictment on August 21, 2019.  See Pro Se Defendant's Motion to Dismiss Indictment/Brady Violations (Doc. 199); Pro Se Defendant's Motion to Dismiss Indictment (Doc. 204).  In an abundance of caution, the Court accepted the untimely filed motions to dismiss, but informed Katrina Brown that, "[a]bsent extraordinary circumstances, the Court [would] not consider any further dispositive motions . . . ."  See Order (Doc. 216).  The Court has also informed Katrina Brown that no further discovery motions will be permitted at this stage in the proceedings.

to provide exculpatory testimony for Co-defendant Reginald Brown." See Renewed Motion at 2. She argues that severance is required "for both defendants to see the face of justice . . . ." Id. at 3. In her Second Affidavit, Katrina Brown avers, in relevant part:

> I will testify for defense at a separate trial for Codefendant, Reginald Brown if the defendants are severed. I will not testify at a joint trial.
>
> In the fall of 2013, I approached Reginald Brown about incorporating A Plus Training and RB Packaging. I assisted him in that process. I filed and paid the fees associated with the Articles of Incorporation for both A Plus Training and RB Packaging . . . . At the time of its incorporation, it certainly, was my intent for A Plus Training, via Reginald Brown, to provide the services described in paragraph 53 of the Indictment (on board and HAACP plan).[5]
>
> Any funds deposited into the accounts of A Plus Training and RB Packaging which were later withdrawn by Reginald Brown were done at my direction. Reginald Brown performed meaningful work during the time contracted to include but not limited to marketing, inspect shelves at various store locations, inspect displays, organize promotional activities, assessment of problematic situations and deliver products to stores and customers. Reginald Brown performed varies [sic] business activities for Cowealth and/or Basic Products LLC., a family business which I am principle of, along with Person A. . . . I never discussed the internal operating procedures or method in which I performed in my business activities with Reginald Brown because it was regarding a loan involving my parent's internal business. I never explained to Reginald Brown that there were procedures set in place for withdrawals. . . .
>
> *Any deposits and withdrawals from the A Plus Training account described in paragraph 72 and 73 of the Indictment were done with my full authority and at my direction.[6]
>
> . . .

---

[5] Notably, Paragraph 53 of the Indictment refers to "Entity A" and "Person C"; it does not reference Reginald Brown or his companies.

[6] Katrina Brown goes on to state that more (but not all) of Reginald Brown's deposits and withdrawals as alleged in the Indictment were done at her direction.

> *Reginald Brown never prepared, assisted in the preparation, or had any knowledge of any invoices submitted to any lender on behalf of either A Plus Training or RB Packaging[.]
>
> I did not discuss with Co-defendant Reginald Brown of my internal business practices of Basic Products LLC and/or Cowealth LLC[.]

Second Affidavit at 4-8.

Reginald Brown's Third Motion to Sever followed on August 29, 2019, in which he argues that the Second Affidavit serves as good cause to excuse his untimely filing and as a basis for severing Defendants' trials pursuant to Rule 14, Federal Rules of Criminal Procedure. See Third Motion to Sever at 2-3. For the reasons set forth below, the Court concludes, for the third time, that severance is not warranted in this case.

## II. Standard

Rule 14 "recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government."[7] Zafiro v. U.S., 506 U.S. 534, 538-39 (1993). Rule 14 provides, in relevant part, that "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When presented with a motion pursuant to Rule 14, the Court must "balance the defendant's right to a fair trial against the public's interest in efficient and economic administration of justice." United States v. Berkman, 433 F. App'x 859, 862 (11th Cir. 2011). "In conducting this analysis, the district court must grant a motion for severance only where denial would 'result[] in compelling prejudice against which the district court

---

[7] The Court has previously determined that Katrina Brown and Reginald Brown were properly joined as Defendants under Rule 8, "because the Indictment expressly alleges that both Defendants were involved in the same series of transactions constituting the alleged conspiracy." See Order Denying First Motions to Sever at 7.

[can] offer[] no protection." United States v. Whitfield, Case No. 08-60229-CR-ZLOCH, 2009 WL 3042394, at *3 (S.D. Fla. Sept. 18, 2009) (quoting United States v. Dowd, 451 F.3d 1244, 1249 (11th Cir. 2006)) (alterations in original). In United States v. Walser, the Eleventh Circuit reaffirmed that "some prejudice" is not sufficient to mandate severance; instead, the defendant carries a heavy burden to go beyond mere conclusory allegations and show that he would receive an unfair trial and suffer compelling prejudice. 3 F.3d 380, 386 (11th Cir. 1993). The court further explained:

> The test for assessing compelling prejudice is whether under all the circumstances of a particular case it is within the capacity of jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on that defendant's own acts, statements and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict. If so, "though the task be difficult," there is no compelling prejudice. Moreover, if the possible prejudice may be cured by a cautionary instruction severance is not required.

Id. at 386-87 (internal citations omitted). In addition, the Supreme Court has instructed that, because limiting instructions are usually sufficient to cure any prejudice, "severances need be granted only if there is a serious risk that a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment about guilt or innocence' even if limiting instructions are given." United States v. Lopez, 649 F.3d 1222, 1234-35 (11th Cir. 2011) (quoting Zafiro, 506 U.S. at 539) (other citations omitted). "Examples of specific constitutionally protected trial rights that might be jeopardized in a joint trial are the Sixth Amendment right to confrontation and the Fifth Amendment right to remain silent. But those rights are only rarely jeopardized by a joint trial." Id. at 35 (citing United States v. Blankenship, 382 F.3d 1110, 1123 n. 24 (11th Cir. 2004)).

In United States v. Cobb, the Eleventh Circuit set out the framework for addressing severance based on a moving defendant's asserted need for a co-defendant's exculpatory testimony:

> Where a defendant argues for severance on the ground that it will permit the exculpatory testimony of a co-defendant, he "must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." United States v. Machado, 804 F.2d 1537, 1544 (11th Cir. 1986); see also United States v. Harris, 908 F.2d 728, 739 (11th Cir. 1990); United States v. Martinez, 486 F.2d 15, 22 (5th Cir. 1973); Byrd v. Wainwright, 428 F.2d 1017, 1019-20 (5th Cir. 1970). Even if the defendant makes such a showing, the court must still "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Machado, 804 F.2d at 1544; accord [Harris, 908 F.2d at 739] (quoting United States v. DeSimone, 660 F.2d 532, 540 (5th Cir. 1981)).

185 F.3d 1193, 1197 (11th Cir. 1999). In reversing the district court's denial of Cobb's motion to sever based on his asserted need for his co-defendant's testimony, the Eleventh Circuit noted that it was dealing with "one of those rare cases" where the need for the proffered testimony was clear. Id. at 1197. The "sole evidence" against Cobb on the charge of receiving stolen funds was the testimony of a woman who claimed to have seen Cobb receive the money from his co-defendant. Id. at 1198. Cobb's co-defendant offered to testify on Cobb's behalf at a separate trial, and his testimony would have directly contradicted the woman's testimony and the only evidence against Cobb. Id. Notably, because the joint trial in Cobb took only one day to complete, "the cost to the [judicial] system of a severance . . . [was] minimal." Id. at 1199.

## III. Analysis

At the outset, the Court finds that Reginald Brown's Third Motion is due to be denied as untimely. Rule 12 requires that motions to sever must be made before trial. See Fed. R. Crim. Pro. 12(b)(3)(D). However, the Court has the authority to establish a schedule of deadlines for defendants to file such pre-trial motions, which in this case the Court set as October 19, 2018. See Fed. R. Crim. Pro. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the [motion] if the party shows good cause." Fed. R. Crim. Pro. 12(c)(3).

Reginald Brown argues that "newly discovered evidence, Ms. Brown's [Second] affidavit, . . . merits consideration of this motion out of time." See Third Motion at 2-3. Upon consideration, the Court is not persuaded that the Second Affidavit constitutes "newly discovered evidence" as asserted by Reginald Brown. While the Second Affidavit contains more information than the first, Reginald Brown has known that Katrina Brown was willing to testify on his behalf since at least October 22, 2018, when he filed the First Affidavit as an exhibit in support of his first motion to sever defendants. Moreover, in denying Reginald Brown's first motion to sever, the Court fully explained why the motion and First Affidavit were insufficient to warrant severance on the basis of Reginald Brown's asserted need for Katrina Brown's trial testimony. Specifically, the Court stated:

> Unlike Cobb, this does not appear to be "one of those rare cases" where the need for the proffered co-defendant's testimony is clear. The Affidavit submitted by [Reginald] Brown does not contain the type of specific and exonerative facts necessary to support severance. See United States v. Novaton, 271 F.3d 968, 990 (11th Cir. 2001) ("[S]tatements concerning the testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance."). In fact, the Affidavit does not contain any factual information and consists of mere conclusory statements and bare denials. See id. (rejecting as

> "conclusory" the co-conspirator's affidavit that stated only that the police officer who provided protection for the drugs in that case "did not conspire with me, or to my knowledge with anyone else, to possess with intent to distribute cocaine"). Importantly, [Reginald] Brown has not offered any details about the substance of [Katrina] Brown's proposed testimony or otherwise attempted to establish the need for her testimony. Indeed, [Reginald] Brown does not even discuss this issue in his Motion to Sever Defendants. Thus, the Court finds that [Reginald] Brown has failed to make the threshold showing required by Cobb.

Order Denying First Motions to Sever at 13. Nothing prevented Reginald Brown from himself describing in greater factual detail the testimony he expected Katrina Brown could give at trial or from (himself; <u>not</u> his attorney) reaching out to Katrina Brown in an effort to procure a more detailed affidavit. Moreover, upon receiving the Court's Order Denying First Motions to Sever, nothing prevented Reginald Brown from promptly requesting leave to file a more detailed motion to sever that sufficiently explained the need for Katrina Brown's testimony and otherwise addressed the considerations set forth by the Eleventh Circuit in Cobb.

On this record, the Court finds that Reginald Brown has failed to establish good cause for the filing of yet another motion to sever, less than one month before trial and based on grounds previously known to Reginald Brown. As such, the Third Motion is due to be denied as untimely. See generally Cobb, 185 F.3d at 1200 ("Cobb's initial severance motion was filed well before trial, but it was not until the morning of trial that he amended it to specify his intention to seek the exculpatory testimony of his [co-defendant's] brother. If the district court had based its ruling upon untimeliness, we might well hold that denial of the motion was not an abuse of discretion."); United States v. Mack, 572 F. App'x 910, 932 (11th Cir. 2014) ("Mack correctly points out that the district court did not deny his motion[, which was filed on a Friday before trial began the following Tuesday,] on

timeliness grounds, although he easily could have done so, in light of counsel's advance knowledge of the statements to the arresting officers."); United States v. Mazard, 486 F. App'x 812, 813-14 (11th Cir. 2012) ("The district court did not abuse its discretion when it denied Mazard's motion to sever as untimely. . . .  Here, the district court ordered all defendants to file any motions to sever within five days of filing of the superseding indictment, which occurred on March 19, 2010.  Mazard did not file his motion to sever until July 12, 2010.  Further, Mazard conceded that his change in counsel did not constitute good cause, and he made no further argument as to good cause."); United States v. Hewes, 729 F.2d 1302, 1320 (11th Cir. 1984) ("[T]he severance motion on which Caldwell relies was not timely.  Caldwell moved for severance several times before and during the trial based on statements contained in his trial attorney's affidavit to the effect that codefendants might give exculpatory evidence if Caldwell was tried separately.  As the magistrate and trial court found, these statements were far too conclusory to warrant a severance.  Caldwell again requested a severance in a post-trial motion for a new trial, which was accompanied by a new, more detailed affidavit of his attorney on which he now relies.  Without a showing that the motion is based on grounds not known before trial, a Rule 14 motion made after trial is not timely.").[8]

Alternatively, the Court finds that the Third Motion is due to be denied on the merits. In support of his second request to sever the joint trials based on his asserted need for Katrina Brown's testimony, Reginald Brown states:

> All of the acts alleged [sic] have been committed by Reginald Brown in furtherance of the conspiracy are acts which are ordinary legal behavior associated with operating a small

---

[8] The Court recognizes that the factual circumstances and timing of the motions to sever at issue in Cobb, Mack, Mazard, and Hewes are different from this case.  Nevertheless, the Court finds the timeliness analysis in these opinions to be instructive in determining that the instant Third Motion is untimely.

> business. The government must somehow connect his otherwise legal behavior with Katrina's [sic] Brown's alleged fraudulent conduct if it has any hope of unanimously convincing the jury beyond a reasonable doubt that he not only knew about her illegal acts but willfully agreed to assist her in the plan. The United States can rely on circumstantial evidence to prove knowledge and willfulness.
>
> The one person, other than Reginald Brown, who can rebut the circumstantial evidence and any inferences of the evidence is Ms. Brown. She has spoken by means of a sworn affidavit. In it, she states under oath she would testify in a separate trial for Reginald Brown. The testimony is exculpatory in nature and effect as to Reginald Brown. The substance of the testimony is outlined in detail in affidavit. There is a bona fide need for the testimony.

Third Motion at 4-5. Upon review, the Court finds that Reginald Brown again fails to make the requisite showing under Cobb such that severance is warranted.

In the Third Motion, Reginald Brown states in conclusory fashion that Katrina Brown's proposed "testimony is exculpatory in nature and effect as to Reginald Brown" and that "[t]here is a bona fide need for the testimony." Third Motion at 5. However, similar to his first motion to sever defendants, Reginald Brown fails to explain "the exculpatory nature and effect of the desired testimony" as required by Cobb. 185 F.3d at 1197. While, he suggests that the exculpatory nature of and need for Katrina Brown's testimony are readily apparent from reading the Second Affidavit, the Court disagrees. Not only is the exculpatory nature of the information in the Second Affidavit far from being readily apparent, the Second Affidavit can be viewed as inculpatory with respect to Reginald Brown. This is so because Katrina Brown confirms that Reginald Brown executed the withdrawals and money transfers alleged in the Indictment, and did so at her direction. Given the conspiracy charge, it is far from obvious how this testimony would be exculpatory.

Few statements contained in the six-page Second Affidavit could be considered even potentially exculpatory to Reginald Brown. For example, Katrina Brown avers that, contrary to the government's theory of the case, Reginald Brown's companies did actually perform services for Katrina Brown's companies. See Second Affidavit at 5-6. However, Katrina Brown's statements regarding the work allegedly performed by Reginald Brown and/or his companies are conclusory and self-serving to Katrina Brown's apparent defense strategy. The Eleventh Circuit has noted that such statements are of dubious value where they would be "in no way contrary to [Katrina Brown's] own interests." See United States v. Pepe, 747 F.2d 632, 651 (11th Cir. 1984); Novaton, 271 F.3d at 990. Moreover, Katrina Brown does not provide a time frame for the services Reginald Brown allegedly provided for her companies or offer details about the nature of the work. The government argues in its Response that the invoices Katrina Brown sent to BizCapital on behalf of RB Packaging state that RB Packaging sold "heavy equipment, food manufacturing equipment, bottles, caps, and labels for barbecue sauce," see Response at 6, but the Affidavit states only that Reginald Brown inspected shelves and displays at store locations, organized promotional activities, assessed "problematic situations," and delivered products to stores and customers. See Second Affidavit at 5. Thus, it is entirely unclear how Katrina Brown's proposed testimony would help to establish that Reginald Brown and/or his companies actually performed the work reflected on the invoices allegedly presented to BizCapital by Katrina Brown.

On this record, the Court is hard-pressed to determine that Katrina Brown's testimony would be of assistance to Reginald Brown. The Court is likewise doubtful of Reginald Brown's bona fide need for Katrina Brown's testimony, especially in light of his failure to articulate how the proposed testimony is exculpatory or helpful to his defense, or

why there is a bona fide need for her testimony. Notably, although Katrina Brown has averred that she would testify at a separate trial, Reginald Brown never even states in his Third Motion that he would like to call her as a witness at a separate trial. See Cobb, 185 F.3d at 1199-2000 (noting that the defendant satisfied his burden of showing that "he likely would have called his [co-defendant] to testify on his behalf" where his lawyer represented to the court that the co-defendant "would be called as a witness if severance were granted"). Thus, the Court finds that Reginald Brown has failed to make the threshold showing required by Cobb.

Assuming arguendo that Reginald Brown had made the requisite threshold showing under Cobb, the Court would nevertheless conclude that countervailing factors weigh against severance. For the same reasons the Court expressed doubt about the exculpatory nature of and bona fide need for Katrina Brown's testimony, the Court likewise concludes that Reginald Brown has not established "the significance of [her] testimony in relation to [Reginald Brown's] theory of the case." See id. at 1197. Again, Reginald Brown has made little attempt to explain the significance of her testimony aside from merely pointing to the existence of the Second Affidavit. The Court further finds that the interests of judicial administration and economy weigh heavily against severance in light of the substantial interest in handling this 38-count conspiracy case in one trial. The case is scheduled for a two-week jury trial to begin in less than one month, and it will likely involve almost forty witnesses, some of whom the government advises will be traveling from out of state, and all of whom would be significantly inconvenienced by having to testify twice. Thus, trying this case twice would result in an enormous disruption and duplication of effort by the Court, the witnesses, and the government. Additionally, the Court

concludes that the lateness of the Third Motion weighs against granting severance. For all of these reasons, Reginald Brown's Third Motion is due to be denied on the merits.

Finally, because Katrina Brown has not offered any reason why she is entitled to severance based on her apparent desire to testify on Reginald Brown's behalf, the Court finds that Katrina Brown has not satisfied the Cobb factors.[9] See United States v. Chavez, 584 F.3d 1354, 1360 (11th Cir. 2009) (identifying the four types of prejudicial joinder warranting severance none of which include the moving defendant seeking a severance based on that defendant's desire to testify for a co-defendant). As such, Katrina Brown's Renewed Motion will also be denied.

Accordingly, it is

**ORDERED:**

1. Defendant's Motions to Sever Defendants and Counts by Providing Officially Exculpatory Testimony (Doc. 215) is **DENIED**.

2. Defendant Reginald Brown's Third Motion to Sever the Trial of Reginald Brown from the Trial of Katrina Brown and Memorandum of Law (Out of Time) (Doc. 224) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on September 5, 2019.

MARCIA MORALES HOWARD
United States District Judge

---

[9] Katrina Brown's Renewed Motion is also due to be denied as untimely. Katrina Brown asserts that she was unable to file a more detailed affidavit when she was represented by an attorney. The Court finds this argument unpersuasive. Indeed, being represented by an attorney did not stop Katrina Brown from completing the First Affidavit and giving it to Reginald Brown.

Lc23

Copies to:

Defendants
Counsel of Record
Pro Se Defendant