**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.   Case No.: 3:18-cr-89-J-34JRK

KATRINA BROWN
REGINALD BROWN

_____

## ORDER

**THIS CAUSE** is before the Court on Defendant Reginald Brown's Motion for Judgments of Acquittal or New Trial and Memorandum of Law (Doc. 284; Reginald Brown's Motion), filed on October 10, 2019; Defendant Katrina Brown's Motion for Judgement [sic] of Acquittal and Memorandum of Law (Amendment to Docket Number 290 submitted on October 16, 2019) (Doc. 292; Katrina Brown's Acquittal Motion), filed on October 17, 2019; and Defendant Katrina Brown's Motion for New Trial and Memorandum of Law (Amendment to Docket Number 291 submitted on October 16, 2019) (Doc. 293; Katrina Brown's New Trial Motion) (collectively, Katrina Brown's Motions),[1] filed on October 17, 2019.[2] The government filed an omnibus response to all three Motions on October 23, 2019. See United States' Omnibus Memorandum Opposing Defendants' Motions for Judgment of Acquittal and for a New Trial (Doc. 294; Response). Without seeking leave of Court, Katrina Brown filed a reply to the government's Response. See Pro Se Defendant Katrina Brown Memorandum in Response to the (294) Government Opposition to

---

[1] The arguments raised in Katrina Brown's Acquittal Motion are identical to those raised in Katrina Brown's New Trial Motion. For convenience, the Court will cite only to Katrina Brown's New Trial Motion.

[2] Katrina Brown filed her original acquittal motion and new trial motion on October 16, 2019. See Motion for Judgements [sic] of Acquittal and Memorzandum [sic] of Law (Doc. 290); Motion for New Trial and Memorandum of Law (Doc. 291).

- 1 -

Defendants' Motions for Judgement [sic] of Acquittal and for a New Trial (Doc. 295; Reply), filed on October 24, 2019. On October 25, 2019, the government moved to strike the Reply, see United States' Motion to Strike Defendant Katrina Brown's Unauthorized Reply in Support of her Motions for Judgment of Acquittal and for a New Trial (Doc. 296; Motion to Strike), and Katrina Brown filed a response in opposition on November 4, 2019, see Defendant Katrina Browns' [sic] Memorandum in Response to United States' Motion to Stike [sic] Defendant Katrina Brown's Unauthorized Reply in Support of Her Motions for Judgement [sic] of Acquittal and for a New Trial (Doc. 299; Response to Motion to Strike).[3]

**I.  Background**

Following a seven-day jury trial, on October 2, 2019, the jury returned verdicts finding Katrina Brown guilty as to Counts One through Thirty-Seven of the Indictment (Doc. 1), see Katrina Brown Verdict Form (Doc. 280), and Reginald Brown guilty as to Counts One through Twelve, Fourteen through Thirty-Three, and Thirty-Eight of the Indictment, see Reginald Brown Verdict Form (Doc. 281).[4] Specifically, the Jury found both Defendants guilty of conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count One); aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Counts Two through Fourteen as to Katrina Brown; Counts Two through Thirteen as to Reginald Brown); aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts Fifteen through Twenty-Seven); and aiding and abetting money laundering in

---

[3] Katrina Brown did not seek leave of Court to file the Reply as is required by the Local Rules, and the Court finds that a reply is not necessary. See Local Rule 3.01(c), United States District Court, Middle District of Florida. In any event, much of the Reply is dedicated to challenging the government's request that Katrina Brown's Motions be denied as untimely, which the Court declines to do for the reasons set forth below.

[4] The jury found Reginald Brown not guilty as to the charge in Count Thirteen of the Indictment. See Reginald Brown Verdict Form at 13. Counts Thirty-Four through Thirty-Seven of the Indictment charged only Katrina Brown. See Indictment at 50-56.

- 2 -

violation of 18 U.S.C. §§ 1957 and 2 (Counts Twenty-Eight through Thirty-Three). The jury also found Katrina Brown guilty of attempted bank fraud in violation of 18 U.S.C. §§ 1349 and 1344 (Counts Thirty-Four and Thirty-Five) and making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014 (Counts Thirty-Six and Thirty-Seven). Finally, the jury found Reginald Brown guilty of failing to file a Form 1040 Tax Return in violation of 18 U.S.C. § 1014 (Count Thirty-Eight).

In short, the evidence at trial established the following. In 2011, Basic Products, LLC and Cowealth, LLC obtained a $2,652,600 Small Business Administration (SBA) loan from lender BizCapital BIDCO I, LLC. Katrina Brown served as a principal for Basic Products and Cowealth, which were both associated with her father's barbecue sauce business, KJB Specialties, LLC. In connection with the SBA loan, KJB Specialties also obtained a loan and grant from the City of Jacksonville, Florida (COJ). Notably, the release of the COJ grant funds was contingent on Basic Products first spending at least 2.9 million dollars, consisting of the SBA loan and COJ loan funds.

The general purpose of the SBA loan was to finance the purchase of inventory, equipment, and a manufacturing facility for the barbecue sauce business, as well as to provide working capital for the business. Because the SBA loan authorization specified how the loan funds could be spent, BizCapital required Basic Products and Cowealth to submit invoices documenting their expenditures before authorizing any loan disbursements. In mid to late 2013, Katrina Brown developed a fraudulent scheme to induce BizCapital to disburse the loan funds. Specifically, Katrina Brown created two entities (A Plus Training and RB Packaging), for which Reginald Brown served as the principal and opened bank accounts. Katrina Brown provided BizCapital, by email, with

invoices from A Plus Training and RB Packaging for services that neither entity ever performed and for products that neither entity ever sold. Relying on those fraudulent invoices, BizCapital mailed checks in the amounts reflected in the invoices directly to A Plus Training and RB Packaging. The checks were mailed to Reginald Brown's home or to that of his mother. Reginald Brown deposited checks into the A Plus Training and RB Packaging bank accounts, and later withdrew a portion of the funds from the A Plus Training and RB Packaging bank accounts, and transferred funds to Katrina Brown, who then deposited the funds into the Basic Products bank account. Both Defendants retained some of the funds for various purposes, including for personal use. After the requisite COJ loan and SBA loan funds had been disbursed to Basic Products, based in part on the fraudulent invoices that Katrina Brown sent to BizCapital, a COJ representative issued the grant money by wiring $210,549.99 to BizCapital for the benefit of Cowealth and Basic Products.

Additionally, in November 2015 and November 2016, after depleting the SBA loan funds, Katrina Brown submitted altered bank statements from Basic Products and KJB Specialties in an attempt to fraudulently obtain a merchant advance loan from a federally insured financial institution. Id. at 50-56. Finally, Reginald Brown failed to file a 2014 tax return. Id. at 56-57.

**II.     Standards**

  **A.     Judgment of Acquittal**

Rule 29, Federal Rules of Criminal Procedure (Rule(s)), provides the Court with authority, where appropriate, to enter a judgment of acquittal following a guilty verdict. Fed. R. Crim. P. 29(c)(2). A motion for judgment of acquittal under Rule 29 "is a direct challenge

to the sufficiency of the evidence presented against the defendant." United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994); see also United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999) ("In considering a motion for the entry of judgment of acquittal under [Rule 29(c)], a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction."). In ruling on such a motion, "a district court must 'determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)).

**B.  New Trial**

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[5] Although "motions for a new trial are disfavored," see United States v. Williams, 146 F. App'x 425, 434 (11th Cir. 2005), the "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant such a motion, see United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). Thus, the court considers "whether the verdict must be set aside in the interest of justice." United States v. Green, 275 F. App'x 898, 899 (11th Cir. 2008) (internal quotation marks and citation omitted); see also Hall, 854 F.2d at 1271 (concluding that the trial "court

---

[5] As the Eleventh Circuit recognized, there are two grounds for granting a new trial under Rule 33: "interest of justice" and newly discovered evidence. See United States v. Hall, 854 F.2d 1269, 1270 (11th Cir. 1988). In this case, the only ground potentially implicated in either Defendants' motion for new trial is the "interest of justice."

has very broad discretion in deciding whether there has been a miscarriage of justice"); Vicaria, 12 F.3d at 198; Martinez, 763 F.2d at 1312.

When a defendant challenges the weight of the evidence in a motion for a new trial, the court "need not view the evidence in the light most favorable to the verdict" and "[i]t may weigh the evidence and consider the credibility of witnesses." Martinez, 763 F.2d at 1312; see also Green, 275 F. App'x at 900. Yet, "'[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" Id. (quoting Martinez, 763 F.2d at 1312-13). Indeed, "[f]or a court to set aside the verdict, '[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" Id. (quoting Martinez, 763 F.2d at 1313). Motions for a new trial based on the weight of the evidence are to be granted "'sparingly and with caution,' only in 'exceptional cases.'" Id. (quoting Martinez, 763 F.2d at 1313).

### III. Discussion

#### A. Timeliness of Katrina Brown's Motions

The Court first turns to the government's argument that Katrina Brown's Motions are untimely because they were time-stamped after 4:30 p.m. on the day the motions were due. See Response at 4. Upon consideration, the Court finds this argument unavailing. Rule 45 sets forth the rules for "computing any time period specified in [the Rules] . . . ." Fed. R. Crim. P. 45(a). To calculate a deadline when a period is "stated in days or a longer unit of time," as relevant here, Rule 45(a)(1) instructs as follows:

>   (A)   exclude the day of the event that triggers the period;
>   (B)   count every day, including intermediate Saturdays, Sundays, and legal holidays; and

> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Id. In addition, Rule 45(a)(4) provides that, unless otherwise specified, the "last day ends: (A) for electronic filing, at midnight in the court's time zone; and (B) for filing by other means, when the clerk's office is scheduled to close."

Rule 29 provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Here, the jury returned its verdicts on October 2, 2019. As such, Katrina Brown's motion for judgment of acquittal was due on October 16, 2019. Because Katrina Brown is proceeding pro se and not authorized to file electronically,[6] she was required "to file by other means, when the clerk's office is scheduled to close." Fed. R. Crim. P. 45(a)(4)(B). Although the Clerk's office closes its doors at 4:00 p.m. (not 4:30, as the government suggests), litigants are permitted to file documents by using the drop box outside of the Clerk's office until the courthouse closes at 5:30 p.m., which is exactly what Katrina Brown did when she filed her original motions on October 16, 2019, at 5:19 p.m. Thus, based on these facts, the Court finds that Katrina Brown's Motions were timely filed.

### B. General Challenges to the Sufficiency of the Evidence

Next the Court addresses Defendants' arguments that the Court erred in denying their oral motions for judgment of acquittal during trial because there was insufficient

---

[6] The Middle District of Florida's Administrative Procedures for Electronic Filing (Administrative Procedures) provide that "[a] pro se litigant . . . is not permitted to file electronically, absent authorization by the Court. A pro se litigant must file all pleadings and documents in paper format with the appropriate divisional Clerk's Office." See Administrative Procedures at 5, available at www.flmd.uscourts.gov. The Court has not authorized Katrina Brown to file electronically.

evidence for the jury to conclude that Defendants knowingly and willfully conspired to commit mail and wire fraud, or that Defendants knowingly and willfully committed the substantive counts of aiding and abetting mail fraud, wire fraud, and money laundering.[7] See Reginald Brown's Motion at 1-2; Katrina Brown's New Trial Motion at 9-10. Defendants also contend that the jury's verdicts are contrary to the weight of the evidence. See id. Upon consideration, the Court finds that Defendants' challenges to the sufficiency of the evidence are due to be rejected for the reasons the Court articulated during trial in denying their oral motions for judgment of acquittal. Indeed, "viewing all the evidence in the light most favorable to the [g]overnment and drawing all reasonable inferences and credibility choices in favor of the jury's verdict," the Court finds that "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Grigsby, 111 F.3d at 833. Moreover, having considered the evidence adduced in this case as set forth above, the Court cannot conclude that it preponderates heavily against the jury's verdicts or that this case is one of those "really exceptional cases" where a new trial should be granted based on the weight of the evidence. Martinez, 763 F.2d at 1313. Accordingly, Defendants are not entitled to relief based on their generalized challenges to the sufficiency of the evidence at trial.

---

[7] Reginald Brown's only specific challenge to the sufficiency of the evidence as to "the substantive counts of mail [fraud], wire fraud and money laundering," is his argument that "a number of the checks which were endorsed and deposited do not bear Mr. Brown's signature." See Reginald Brown's Motion at 1-2. This argument is unavailing. As the Court stated in ruling on Reginald Brown's oral motion for judgment of acquittal during trial, the evidence established that BizCapital mailed checks to Reginald Brown's home or his mother's home, the checks were deposited into the A Plus Training and RB Packaging bank accounts, after which, in some cases, funds were then withdrawn and deposited into the Basic Products' account. The evidence also reflected that Reginald Brown was the only signatory on the A Plus Training and RB Packaging bank accounts. Thus, there was sufficient evidence for a reasonable jury to convict Reginald Brown of these charges, regardless of whether he endorsed every check mailed by BizCapital.

### C. Denial of Pretrial Motions

Both Defendants also argue that the Court erred in denying their pretrial motions. See Reginald Brown's Motion at 2; Katrina Brown's New Trial Motion at 9. However, Defendants do not explain how the Court's denial of these pretrial motions entitles them to a new trial or judgment of acquittal. Nor do they point to any specific deficiency in the Court's prior rulings that would entitle them to such relief. As such, the Court declines to grant a new trial or enter judgments of acquittal as to either Defendant on the basis of its pretrial rulings.

### D. Evidence regarding the SBA Audit of BizCapital

Both Defendants contend that the Court erred in restricting the cross-examination of Frank Palmisano and other BizCapital representatives concerning the SBA's decision to recover a portion of the loan proceeds from BizCapital. See Reginald Brown's Motion at 2; Katrina Brown's New Trial Motion at 9. Katrina Brown also asserts that the Court erred in excluding emails from November 7, 2018, through June 26, 2019, between the SBA and BizCapital regarding the SBA's audit of BizCapital in connection with the SBA loan. See Katrina Brown's New Trial Motion at 9. During trial, Defendants argued that the SBA's audit and, more specifically, its decision to recover a portion of the loan proceeds from BizCapital was relevant to BizCapital's credibility and to the materiality of the fraudulent invoices that Katrina Brown sent to BizCapital. The Court prohibited Defendants from asking BizCapital witnesses about the details of the SBA's audit. In doing so, the Court cited Eleventh Circuit authority instructing that materiality turns on the objective reliability of the misrepresentation and not on any negligence of the victim. See United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is

no less guilty of fraud because his victim is also guilty of negligence."); United States v. Neder, 197 F.3d 1122, 1128 (11th Cir. 1999) ("Because the issue is whether a statement has a tendency to influence or is capable of influencing a decision, and not whether the statement exerted actual influence, a false statement can be material even if the decision maker did not actually rely on the statement."). The Court also noted that the SBA's audit and decision to recover loan proceeds from BizCapital occurred years after Katrina Brown's last fraudulent invoice to BizCapital. As such, the evidence was not relevant to any of the issues the jury had to determine. Nevertheless, because the Court determined that the SBA's decision to demand that BizCapital repay a portion of the loan could be relevant for credibility purposes, the Court permitted Defendants to ask BizCapital witnesses if they were aware of the demand, and Reginald Brown argued the issue to the jury. Thus, for the reasons articulated by the Court during trial, Defendants' requests for a new trial and judgments of acquittal are not warranted on this basis.

### E. The Forbearance Agreement

Similarly, Katrina Brown asserts that the Court erred in excluding a forbearance agreement between BizCapital, Cowealth, and Basic Products. See Katrina Brown's New Trial Motion at 9. During trial, Katrina Brown argued that the forbearance agreement was relevant to show that BizCapital improperly used $127,000 of the COJ grant funds to repay the COJ loan. The Court permitted Katrina Brown to ask Mr. Palmisano whether any portion of the COJ grant funds was used for that purpose. The Court also instructed Katrina Brown that she could use the forbearance agreement to attempt to refresh Mr. Palmisano's recollection on that issue. After doing so, Katrina Brown asked Mr. Palmisano, over the government's objection, whether he recalled BizCapital using a

portion of the COJ grant funds, to which he responded, "Yes." Katrina Brown never attempted to introduce the document. Indeed, it appeared that Katrina Brown only wanted the jury to hear that BizCapital had used a portion of the COJ grant funds, and she accomplished this through her questioning of Mr. Palmisano. The Court also notes that the relevancy of the forbearance agreement itself was questionable, as it occurred well after the time period alleged in the Indictment. Accordingly, Katrina Brown's Motions are due to be denied on this basis.

### F. Reginald Brown's Opening Statement

Next, Katrina Brown argues that Reginald Brown's opening statement violated her rights under the Confrontation Clause. See Katrina Brown's New Trial Motion at 1-4. In support of this argument, Katrina Brown relies on the following comments:

> [A]s you probably figured out by now, Mr. Brown will give up that valuable important right to remain silent and take the stand in his own defense to these serious conspiracy charges of mail, wire fraud, and money laundering.
> And in the -- it may seem obvious to you already, and if it doesn't now, it will by the time the trial is completed, that he should have been more suspicious.
> Where is this money coming from? What's it for?
> But sadly for Mr. Brown, ladies and gentlemen, the evidence will be it was not until late 2016 and late – early 2017, after he learned that he too might be the target of this mass of ongoing federal investigation by the federal authorities that he starts asking questions of Ms. Brown about – about RB Packaging.
>
> . . .
>
> In late 2016 and early 2017, he learns that he is also the subject of this ongoing investigation, and he has the opportunity for the first time to seriously question Katrina Brown about the source of the money.

> It is after he learns that he might be implicated in this allegation that he confronts Ms. Brown directly about those allegations.
> It is at this meeting he asked her, he tells [sic]: The FBI is investigating me. What's going on?
> It's at this meeting Katrina Brown admits tearfully that she did it. She prepared the false invoices. She e-mailed the lender. She oftentimes picked up the deliveries from his home.
> Reginald Brown had no knowledge of the – that she submitted false invoices to the lender.
>
> . . .
>
> Ladies and gentlemen, much of the evidence in this case will come from Mr. Brown himself. And some of that testimony, as you've already probably determined, is going to be pretty embarrassing for him.

Jury Trial Transcripts (Excerpts from Opening and Closing Statements) (Doc. 288; Trial Tr.) at 32-33, 37-39. Katrina Brown did not raise any objection during or immediately after Reginald Brown's opening statement.

Five days later, however, Katrina Brown moved for mistrial based on these comments. Similar to the arguments raised in the instant motions, Katrina Brown maintained that Reginald Brown's attorney was acting as a "third prosecutor."[8] The Court denied the motion for mistrial, finding that it was untimely and without merit. Despite his attorney's statement that Reginald Brown would testify regarding Katrina Brown's alleged

---

[8] Katrina Brown asserts that she "openly objected to the Court that Attorney Thomas Bell stipulated that his client Reginald Brown will testify that Katrina Brown confess guilt . . . ." Katrina Brown's New Trial Motion at 2. Contrary to this assertion, Katrina Brown never specifically objected to Reginald Brown's opening or closing statements on the basis of his attorney's assertion that Reginald Brown would testify at trial. Instead, during Reginald Brown's closing argument she objected on the following grounds: "First of all, he's insinuating that I committed a crime; number two, he's insinuating that I use other people and he's acting like the prosecutor." Trial Tr. at 101. Katrina Brown further argued that, because they were being tried jointly, Reginald Brown could not insinuate that she had committed crimes. Id. The Court overruled the objection, determining that any objection based on the opening statement was untimely, and Reginald Brown was free to take the strategic position that his co-defendant was guilty but that he was not. Id.

- 12 -

confession to him, he ultimately decided not to take the stand during trial. Based on these events, Katrina Brown now argues that her Confrontation Clause rights were violated when "Reginald Brown did not take the stand to testify to the confession his Attorney Mr. Bell stated in the opening statement." Katrina Brown's New Trial Motion at 2. She further contends that if Reginald Brown's attorney had not stated that "Reginald Brown would testify to a confession Katrina Brown made to him which his client did not take the stand the results of this case proceeding would have been different." Id. at 4.

The Court finds that Katrina Brown's reliance on the Confrontation Clause is misplaced. The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right "to be confronted with the witnesses against" her and to cross-examine them. U.S. Const. amend. VI. However, Reginald Brown's attorney's comments during opening statement were not testimony, and the jury was instructed as much multiple times. Indeed, it is well-settled "'that juries are presumed to follow the instructions of the Court.'" United States v. Kabbaby, 672 F.2d 857, 863 (11th Cir. 1982) (quoting United States v. Vaughn, 546 F.2d 47, 51 (5th Cir. 1977)). See also United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir. 1996) ("We presume that a jury follows the court's instructions."). Nothing in the record suggests that Reginald Brown's decision not to testify rendered his opening statement so prejudicial so as to be incurable by the Court's repeated instruction that what the lawyers say is not evidence. Accordingly, the Court finds that Katrina Brown is not entitled to a new trial or judgment of acquittal on the basis of Reginald Brown's opening statement.

### G. Counts Thirty-Four through Thirty-Seven

Finally, Katrina Brown argues that there was insufficient evidence to support the charges of attempted bank fraud (Counts Thirty-Four and Thirty-Five) and making false statements to a financial institution (Counts Thirty-Six and Thirty-Seven). See Katrina Brown's New Trial Motion at 4-9. Specifically, Katrina Brown asserts that the government failed to establish that Lendcore, Bizfi, and Credibly are federally insured financial institutions, as required by the Court's instructions to the jury. Id. This contention is unavailing. It appears that Katrina Brown misunderstands what the government was required to prove to convict her of attempted bank fraud and making false statements to a federally insured financial institution.

To convict Katrina Brown of the attempted bank fraud charges, the government had to prove the following facts beyond a reasonable doubt:

> (1) the Defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;
>
> (2) the false or fraudulent pretenses, representations, or promises were material;
>
> (3) the Defendant intended to defraud the financial institution;
>
> (4) the financial institution was federally insured; and
>
> (5) the Defendant's intent was strongly corroborated by her taking a substantial step toward committing the crime.

Court's Instructions to the Jury (Doc. 279) at 23.

To convict Katrina Brown of the making false statements to a federally insured financial institution charges, the government had to prove the following facts beyond a reasonable doubt:

> (1) the Defendant made a false statement or report;
>
> (2) the Defendant did so knowingly and with intent to influence an action of the institution described in the indictment regarding an application, advance, commitment, or loan, or a change or extension to any of those; and
>
> (3) the deposits of the institution were insured by the Federal Deposit Insurance Corporation [(FDIC)].

Id. at 25.

At trial, the government introduced evidence that Katrina Brown emailed false bank statements to representatives of Lendcore and BizFi in order to obtain merchant advance loans on behalf of KJB Specialties and Basic Products. The evidence also established that Lendcore and BizFi were brokers of merchant advance loans for Credibly, whose loan funds originated from WebBank. Thus, the government was required to prove that WebBank was federally insured, not that Lendcore, BizFi, or Credibly were federally insured. The government established WebBank's federally insured status through FDIC employee Ian Kemp who testified that in 2015 and 2016, WebBank's deposits were FDIC insured. Importantly, the government was not required to prove that Katrina Brown knew the lender was a federally insured bank.[9] See United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996) ("Whether the defendant knew of the victim institution's insured status is not important. That the defendant knowingly directed [her] conduct at a bank that the

---

[9] Similarly, contrary to the arguments raised by Katrina Brown, the government was not required to prove that WebBank ever received the false bank statements or actually disbursed any funds. See Court's Instructions to the Jury at 23-25.

- 15 -

government can prove was insured is enough."). Moreover, "the focus of the scienter inquiry is whether the defendant's purpose was to influence the action of a federally insured institution, rather than whether the defendant's fraudulent representations were made directly to a federally insured institution." United States v. Jack, 216 F. App'x 840, 844 (11th Cir. 2007) (collecting cases). Applying these principles and considering the evidence presented at trial, the Court concludes that the jury reasonably could have inferred that Katrina Brown knew the fraudulent bank statements would influence a federally insured institution engaged in lending activity. Accordingly, the Court finds that Katrina Brown is not entitled to a new trial or judgment of acquittal.

Accordingly, it is

**ORDERED:**

1. Defendant Reginald Brown's Motion for Judgments of Acquittal or New Trial and Memorandum of Law (Doc. 284) is **DENIED**.

2. Defendant Katrina Brown's Motion for Judgement [sic] of Acquittal and Memorandum of Law (Amendment to Docket Number 290 submitted on October 16, 2019) (Doc. 292) is **DENIED**.

3. Defendant Katrina Brown's Motion for New Trial and Memorandum of Law (Amendment to Docket Number 291 submitted on October 16, 2019) (Doc. 293) is **DENIED**.

4. The United States' Motion to Strike Defendant Katrina Brown's Unauthorized Reply in Support of her Motions for Judgment of Acquittal and for a New Trial (Doc. 296) is **GRANTED**.

5. Pro Se Defendant Katrina Brown Memorandum in Response to the (294) Government Opposition to Defendants' Motions for Judgement [sic] of Acquittal and for a New Trial (Doc. 295) is **STRICKEN**.

**DONE AND ORDERED** at Jacksonville, Florida on November 25, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc23

Copies to:

Pro Se Defendant
Counsel of Record